504 F.2d 499
 In the Matter of DOLLY MADISON INDUSTRIES, INC., and Its
Subsidiaries, et al.,
Debtors. Appeal of STATE CORPORATION COMMISSION OF
VIRGINIA, an administrative, legislative and
judicial division of the government of Virginia.
 No. 73-2105.
 United States Court of Appeals, Third Circuit.
 Submitted under Third Circuit Rule 12(6) Sept. 4, 1974.
Decided Oct. 10, 1974.
 
 J. Gregg Miller, Philadelphia, Pa., for debtors; Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel.
 Lewis S. Minter, Joel H. Peck, Richmond, Va., for appellant.
 Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This appeal involves the scope of summary jurisdiction in bankruptcy. We are called upon to determine whether it is within the summary jurisdiction of a Chapter X reorganization court to order a State Corporation Commission to reinstate a debtor's certificate of authority to do business. The district court's order of October 3, 1973 ordered reinstatement. We reverse and hold that jurisdiction to issue such an order was lacking.
 
 I.
 
 2
 In 1969, Dolly Madison Industries, Inc. (hereinafter 'DMI') was issued a certificate of authority to transact business in the State of Virginia by the State Corporation Commission (hereinafter 'SCC'). Article IX, Section 2 of the Virginia Constitution (1971) provides that '. . . the (SCC) shall be the department of government through which shall be issued all . . . licenses of foreign corporations to do business in this Commonwealth.' In 1970, a registration fee was assessed against DMI pursuant to Sections 58-450 and 58-451, 1950 Code of Virginia, as amended.[1] DMI failed to pay the required registration fee and failed to file the annual report required by Sections 13.1-120 and 13.1-121, 1950 Code of Virginia, as amended.[2]
 
 
 3
 On June 24, 1970, the District Court for the Eastern District of Pennsylvania entered an order approving DMI's petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. 501 et seq. That order, which authorized the trustee to operate the business of the debtor, included, among other provisions, authority to incur the expenses necessary to preserve, protect and conduct the affairs of the debtor;[3] specific authority to pay, 'The cost of maintaining the corporate existence of said debtor . . .' (Par. 10(c), order of June 24, 1970); and an injunction against interference with the trustee's management of the debtor.[4]
 
 
 4
 The trustee, having received notices from several states of the revocation of DMI's certificate of authority to do business, petitioned the district court for an order enjoining various secretaries of state from cancelling DMI's authorizations. The reorganization court, on the same day, December 4, 1970, issued the desired injunctive order.[5]
 
 
 5
 In January 1971, the SCC mailed a notice of registration fee assessment and an annual report form to the debtor corporation. Neither the fee nor the completed 1971 annual report was received by the SCC before the March 1st due date. Accordingly, by letter dated April 30, 1971, the SCC notified DMI that its certificate of authority would be automatically revoked on June 1, 1971, pursuant to Section 13.1-117,[6] 1950 Code of Virginia, as amended, for failure to file the required annual reports and to pay the related fees for two consecutive years. On May 31, 1971 (one day prior to the statutory revocation date), the SCC received from the trustee of DMI, the debtor's annual reports for the years 1970 and 1971. DMI did not remit any registration fees, contending that '. . . the U.S. District Court . . . has enjoined us from paying any obligations incurred prior to June 24, 1970 and has prohibited any public officials from instituting any actions or proceedings until further notice.' (Letter from DMI to the SCC dated May 28, 1971). On June 4, 1971, the SCC returned the two annual reports, pursuant to 13.1-121, 1950 Code of Virginia, as amended (see n.2, supra), on the ground that the reports were inaccurate as filed. SCC further advised the debtor that its certificate of authority was revoked by operation of law on June 1, 1971, and that the SCC had no discretion in the matter.[7]
 
 
 6
 Unwilling to proceed pursuant to Virginia's re-entry statute,[8] the trustee petitioned the district court on May 3, 1973 for an order to show cause why the certificate of authority should not be deemed in full force and effect. The order to show cause issued on May 4, 1973. The SCC argued that the certificate had been revoked automatically under Virginia law for failure of DMI to file annual reports for two successive years (since, when filed, the reports were inaccurate) and for failure of DMI to pay the required registration fees before the June 1, 1971 deadline. The SCC also denied the jurisdiction of the district court. The court, in its memorandum Opinion and Order of October 3, 1973, implicitly rejected SCC's jurisdictional argument and interpreted its prior order of December 4, 1970, as precluding the SCC from taking into consideration pre-petition failures to comply with Virginia law (i.e., the delinquent 1970 filing and fees).[9] Concluding that at worst the debtor had failed to comply with Virginia's statutes for one year (1971), the court ordered the SCC to reinstate DMI's certificate of authority. The SCC appeals from that order.
 
 II.
 
 7
 Section III of the Bankruptcy Act confers on a reorganization court '. . . exclusive jurisdiction of the debtor and its property, wherever located.' 11 U.S.C. 511. Courts of bankruptcy are empowered to issue an injunction in a summary proceeding when necessary to prevent the defeat or impairment of their exclusive jurisdiction or to protect the property and assets of a bankrupt wherever situated. The power of a bankruptcy court to protect by injunction the subject matter of its jurisdiction is inherent in the court as a virtual court of equity and exists as well by virtue of Sec. 2, sub. (a)(15) of the Bankruptcy Act, 11 U.S.C. 11, sub. (a)(15). In re International Power Securities Corp., 170 F.2d 399, 402 (3d Cir. 1948). See First National Bank v. Lake, 199 F.2d 524, 528 (4th Cir. 1952); In re Standard Gas and Electric Co., 139 F.2d 149, 152 (3d Cir. 1943).
 
 
 8
 Summary jurisdiction is generally limited to the adjudication of questions concerning (1) the administration of the debtor's estate, and (2) the property in the court's actual or constructive possession. See Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). See also 2 Collier on Bankruptcy, P23.02(1), et seq., 6 Collier on Bankruptcy, P3.03, et seq. (14th ed.). The trustee does not contend that the district court's order was based on the power of the court to administer the reorganization.[10] Thus, the district court's summary jurisdiction, if any, must stand or fall on whether that court was exercising control over the debtor's property.
 
 
 9
 The trustee does not argue that the certificate of authority is itself a property right. Rather, the trustee points to DMI's Blackstone, Virginia manufacturing plant as the res required for the exercise of summary jurisdiction by the district court. The trustee then argues that revocation of the certificate of authority deprives DMI of the right to operate that plant; thus, constituting an interference with 'property' within the jurisdiction of the reorganization court.[11] We do not believe, however, that the scope of a bankruptcy court's summary jurisdiction is as broad as the trustee suggests.[12]
 
 
 10
 In the instant case, the reorganization court has not acted to preserve its power to adjudicate claims relating to the trustee's property. Unlike the situation in which a bankruptcy court enjoins prosecution of a claim in a different forum,[13] here the SCC has made no claim against 'property' of the debtor corporation. The mere fact that the debtor's property may be affected by state law does not constitute a 'claim' against that 'property' and absent such a 'claim' summary jurisdiction is unavailable.[14]
 
 
 11
 In Gillis v. California, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934), the receiver of a corporation undergoing reorganization asked the district court to sanction non-compliance with a California licensing law. The receiver contended that without such an exemption he would be unable to continue operating the business. The Supreme Court held that the bankruptcy court was powerless to authorize non-compliance with the state licensing statute, regardless of the consequences. Significantly, the Court concluded its opinion with this statement:
 
 
 12
 We are not dealing here with the acknowledged power of courts to protect property in their custody.
 
 
 13
 293 U.S. at 67, 55 S.Ct. at 6. In light of Gillis, the district court's order to reinstate DMI's certificate of authority to do business cannot be viewed as protective of a res within the court's jurisdiction. Since preservation of the debtor's property is the only theory advanced by the trustee in support of the district court's jurisdiction, it follows that the court lacked the summary jurisdiction necessary to issue the October 1973 order under review.
 
 
 14
 The cases relied upon by the trustee do not compel a contrary result. In re International Power Securities Corp., 170 F.2d 399 (3d Cir. 1948) involved the consolidation of claims against the debtor's estate. As the court indicated, 'It was impossible to administer the estate, or to reorganize the debtor, without determining the controversy between appellants and appellee.' 170 F.2d at 405. In re Standard Gas & Electric Co., 139 F.2d 149 (3d Cir. 1943) and In re Preston Mining Co., 203 F.Supp. 103 (E.D.Pa.1962) affirmed the power of the district court to enjoin direct interferences with potential choses in action of the debtor corporation. In each of these cases, unlike the instant case, the district court acted to preserve the 'property' of the debtor.
 
 
 15
 The district court's reliance on Stout v. Green, 131 F.2d 995 (9th Cir. 1942) and In re Hotel Martin Co., 41 F.Supp. 392 (N.D.N.Y.1941) was misplaced.[15] In Stout, the Court upheld the issuance of an injunction against the enforcement of California's Alcoholic Beverage Control Act. Section 51 of that Act authorized the seizure of unlicensed stills. One of the debtor's assets consisted of such a still and the injunction, therefore, only prevented interference by State Liquor Officers with property belonging to the debtor and clearly within the traditional summary jurisdiction of the bankruptcy court. In Hotel Martin, the district court granted a motion for an order restraining the New York Department of Labor from holding a hearing to determine the debtor's liability for unemployment taxes. Once again the threatened state action was aimed directly at the property of the debtor corporation and warranted an exercise of summary jurisdiction to preserve the debtor's res for ultimate disposition in the bankruptcy court. Neither of these cases authorize an injunction against the operation of a state law absent a claim against a 'property' interest of the debtor.
 
 
 16
 Since the order of the district court, requiring the reinstatement of DMI's certificate of authority to do business was based neither on the court's power over the administration of the debtor's estate nor on its power to preserve the debtor's property, the district court lacked summary jurisdiction.
 
 
 17
 The Judgment of the district court will be reversed, with the direction that the order of October 3, 1973 be vacated.
 
 
 
 [1]
 58-450. Annual registration fees for domestic and foreign corporations.-- Every domestic corporation, and every foreign corporation authorized to do business in this State, . . . shall pay into the State treasury on or before the first day of March in each and every year an annual registration fee
 Such annual registration fee shall be irrespective of any specific license tax or other tax or fee imposed by law upon the corporation for the privilege of carrying on its business in this State or upon its franchise, property or receipts . . ..
 58-451. Assessment of registration fee and forwarding of statement.-- The State Corporation Commission shall ascertain from its records the amount of the authorized maximum capital stock of each of such corporations, as of the first day of January of each year, and shall assess against each such corporation the registration fee herein imposed. A statement of the assessment, when made, shall be forwarded by the clerk of the State Corporation Commission, before the fifteenth day of February, to the Comptroller and to each such corporation.
 
 
 [2]
 13.1-120. Annual report of domestic and foreign corporations.-- Each domestic corporation, and each foreign corporation authorized to transact business in this State, shall file, within the time prescribed by this Act, an annual report setting forth:
 (a) The name of the corporation . . .. (b) * * * (c) * * * (d) * * * (e) * * * (f) * * *
 The report shall be made on forms furnished by the Commission, shall supply the information as of the date of the report and shall be verified by the oath of the president or a vice-president or the secretary or an assistant secretary of the corporation.
 
 
 [13]
 1-121. Filing of annual report.-- The annual report of a domestic or foreign corporation shall be delivered to the Commission between the first day of January and the first day of March of each year after the calendar year in which it was incorporated or authorized to transact business in this State. If the report is incomplete or inaccurate, the Commission shall return it for correction. Otherwise the Commission shall file it in the clerk's office
 
 
 [3]
 The order authorized the trustee:
 (9)(g) To do any and all such things and to incur such other expenses as may be necessary and advisable in the proper management and conduct of the affairs of said debtor and in the preservation and protection of the property and assets of the within estate, including, if said trustee deems it necessary and advisable, the consummation of the agreements between Dolly Madison Industries, Inc. and other parties, all as described in the petition;
 (10) That until the further order of this court, said trustee, in his discretion, be, and he hereby is, authorized to pay from time to time out of any (and) all funds now or hereafter coming into his hands and available for such purposes.
 (b) All proper expenses and obligations incurred by him on or after the date of this order in operating the business and preserving and maintaining the property and assets of the within estate, as herein authorized, . . ..
 
 
 [4]
 The broad language used by the district court arguably included an injunction against suspension of DMI's certificate of authority to do business in Virginia:
 
 
 [15]
 That until final decree or the further order of this court, all creditors and stockholders, and all sheriffs, marshals and other officers, and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity against said debtor or said trustee in any court, or from executing or issuing or causing the execution or issuance out of any court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon any property owned by or in the possession of the said debtor or said trustee, and from doing any act or thing whatsoever to interfere with the possession or management by said debtor or said trustee of the property and assets of the within estate, or in any way interfere with said trustee in the discharge of his duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over said debtor and said trustee and their respective properties
 
 
 [5]
 The district court's order of December 4, 1970 provided in relevant part:
 The Secretaries of State, taxing authorities and other appropriate officials of the states listed below (hereinafter referred to as the 'Officials') are hereby specifically enjoined and stayed from instituting any actions at law or proceedings in equity against the trustee and/or the debtor corporations listed along with such states below and from taking any other action to interfere with the conduct of business of the debtor corporations by the trustee in such jurisdictions, including specifically the revocation of authority to do business in such jurisdictions, where such action at law, proceeding in equity or other action is based on the debtor's failure to take certain action in such jurisdiction prior to June 24, 1970 or the non-payment of liabilities to such jurisdictions which had accrued on or before June 24, 1970:
 Provided that, such Officials may hereafter intervene in these proceedings to seek appropriate modifications or vacation of this Order.
 
 
 [6]
 If any foreign corporation shall fail on two successive annual dates to file the annual report required by this Act or to pay the annual registration fee required by law, the Commission shall mail notice to it of impending revocation of its certificate of authority to do business in this State. Whether or not such notice be mailed, if the corporation fails before the first day of June after the second such annual date to file the annual report or to pay the annual registration fees, together with a penalty of five per centum, of the registration fees and interest at the rate of six per centum per annum on the total amount of any registration fees assessed, such foreign corporation shall thereupon automatically cease to be authorized to do business in this State and its certificate of authority shall be automatically revoked as of the first day of June
 
 
 [7]
 The SCC subsequently received from DMI a check in the amount of $26.25. Taking the position that revocation of DMI's certificate had not extinguished its liability for past due registration fees, the check was deposited to the credit of the Treasurer of Virginia
 
 
 [8]
 Va. Code Ann. 13.1-115.1 provides that:
 A foreign corporation whose authority to transact business in this State has been surrendered or revoked shall, upon re-entering the State, comply with all the requirements of law applicable to an original application for a certificate of authority, including the payment of fees, except that it need not file again a copy of its charter or any amendment thereof that is then on file in the office of the clerk of the Commission . . ..
 The trustee's reluctance to comply with the statutory reinstatement procedure apparently stems from the fear that a $1,250. fee would be imposed to obtain a new certificate of authority.
 
 
 [9]
 The SCC argues that Virginia does not penalize a corporation's failure to file one annual report and to pay one registration fee. It is only when a second consecutive failure to comply with Virginia statutes occurs that revocation of a corporation's certificate of authority results. The post-petition filing requirement was an obligation of the trustee, contends SCC, and it was that second consecutive default, not the pre-petition default, that triggered revocation of DMI's authorization. (We note that the trustee had authority under paragraph 10(c) of the June 1970 order to file such reports and incur such expenses)
 By reason of our disposition, holding that the district court did not have summary jurisdiction to issue its order of October 3, 1973, we need not reach this issue or other issues raised by the parties. In particular, we do not reach and, hence, we do not decide whether 28 U.S.C. 959(b) bars a mandatory injunction against the State of Virginia such as the October 1973 order from which this appeal is taken.
 
 
 [10]
 In ordinary bankruptcy, 'administrative' control relates to such matters as '. . . the allowance, rejection, and reconsideration of claims, the reduction of the estates to money, and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them.' United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 217, 32 S.Ct. 620, 625, 56 L.Ed. 1055 (1912)
 
 
 [11]
 The trustee's May 4, 1973 petition, among other things, alleges: '. . . 7. The penalties for doing business in Virginia without a Certificate of Authority are (a) inability to institute actions to enforce contracts in the State of Virginia and (b) personal liability to officers and directors up to $1,000 each . . ..'
 
 
 [12]
 Appellant correctly points out that not every 'affect' on the debtor's property constitutes proper subject matter for an exercise of summary jurisdiction by the reorganization court. As the Supreme Court indicated in Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949), '. . . Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate . . ..'
 
 
 [13]
 In In re Standard Gas & Electric Co., 139 F.2d at 152, this Court noted:
 It will hardly be questioned that a District Court has power to protect by injunction its exclusive jurisdiction over the property and assets of a bankrupt. And the same is true with respect to the property and assets of a debtor or the proceedings in bankruptcy for the debtor's reorganization . . ..
 
 
 [14]
 In Callaway v. Benton, supra, the Supreme Court concluded that summary jurisdiction did not extend to particular property interests owned by a party other than the debtor. While the Court recognized that the ultimate disposition of the 'property' might cause '(a) serious practical problem' to the debtor's res (336 U.S. at 148, 69 S.Ct. 435), there is no suggestion that this practical problem would be legally sufficient to invoke the bankruptcy court's jurisdiction
 
 
 [15]
 In any event, In re Hotel Martin Co., supra, constitutes questionable authority in support of the district court's jurisdictional theory. In Hotel Martin, the New York State Department of Labor filed its claim for taxes (alleging priority) in the bankruptcy proceeding. Without regard to any other consideration, such a voluntary act by the claimant would necessarily submit it to the summary jurisdiction of the bankruptcy court