SPRECHER, Circuit Judge.
 

 At issue is whether the filing of a Chapter XI bankruptcy petition under the 1898 Act operates as an automatic stay of the National Labor Relations Board unfair labor practice proceedings when the assets of the bankrupt estate are not threatened and the bankrupt estate is being reorganized and not liquidated.
 

 I
 

 Fortunately, the precise issue raised by this appeal — whether an automatic stay rule promulgated under Chapter XI of the Bankruptcy Act of 1898 prevents the National Labor Relations Board from prosecuting an unfair labor practice case — will soon become virtually moot inasmuch as the Bankruptcy Reform Act of 1978 will apply to cases filed on or after October 1, 1979.
 

 On August 18, 1978, the Board issued against the debtor and another employer a consolidated unfair labor practice complaint which was scheduled for hearing on December 13, 1978.
 

 On December 12, 1978, the debtor filed a Chapter XI petition and the bankruptcy judge issued an order giving notice to'the Board that the filing of the petition operated as a stay of the continuation of the unfair labor proceeding. Chapter XI provides for an arrangement proceeding, that is, any plan of a debtor for the settlement, satisfaction, or extension of time for payment upon any terms of his unsecured debts. Upon the filing of the petition, a receiver was appointed to take charge of the property and to operate the business of the corporate debtor.
 

 On December 21, 1978, the Board timely filed a notice of appeal to the district court. On May 17, Í979, the district court affirmed the order of the bankruptcy court, supporting its judgment with a memorandum decision and holding that Bankruptcy Rule 11-44 effectively prevented the Board from pursuing the unfair labor practice proceeding. The Board then appealed to this court.
 

 II
 

 Bankruptcy Rule 11-44 provides in part: A petition filed under . . . [Chapter XI] shall operate as a stay of the commencement or the continuation, of any court
 
 or other proceeding
 
 against the debtor
 

 Bankruptcy Rule ll-44(a) [emphasis added].
 

 The district judge pointed out that the above-quoted portion of the Chapter XI automatic stay provision is identical to the language of the Chapter X automatic stay provision. See Bankruptcy Rule 10-601. Chapter X pertains to corporate reorganizations, however, and is subject to certain other provisions, such as 11 U.S.C. § 672 (now repealed with the rest of the 1898 Bankruptcy Act):
 

 The right of employees or of persons seeking employment on the property of a debtor under the jurisdiction of the court to join a labor organization of their choice, or to refuse to join or remain members of a company union, shall be free from interference, restraint, or coercion by the court, a debtor, or trustee. It shall be the duty of a debtor or trustee to report to the judge any agreement restricting or interfering with such right, and the judge shall thereupon enter an appropriate order for the termination of such agreement and for notice to the employees that the same is no longer binding upon them. No funds of the estate shall be used by a debtor or a trustee for the purpose of maintaining company unions.
 

 The National Labor Relations Act, 29 U.S.C. § 151
 
 et seq.,
 
 expressly provides that it takes precedence over 11 U.S.C. § 672:
 

 Wherever the. application of the provisions of section 672 of Title 11 conflicts
 
 *11
 
 with the application of the provisions of this subchapter, this subchapter shall prevail:
 
 Provided,
 
 That in any situation where the provisions of this subchapter cannot be validly enforced, the provisions of such other Acts shall remain in full force and effect.
 

 29 U.S.C. § 165.
 

 As the district court correctly noted, the fact that Congress did not provide in like manner for the National Labor Relations Act to take precedence over Chapter XI proceedings distinguishes cases which hold that the Labor Board matters are not stayed by Chapter X proceedings. It does not necessarily follow, however, as the district judge concluded, that Board proceedings are stayed by Chapter XI proceedings. 29 U.S.C. § 165 may simply be the response of Congress to 11 U.S.C. § 672. Not finding an analogous provision in Chapter XI, Congress may have seen no need to determine whether or not the National Labor Relations Act took precedence over Chapter XI proceedings.
 

 After the district court’s decision in this case, the Court of Appeals for the Ninth Circuit held that the Board’s regulatory proceedings “cannot be subject to the automatic stay provisions of Bankruptcy Rule 110-44.”
 
 In re Bel Air Chateau Hospital, Inc.,
 
 611 F.2d 1248, 1250-51 (9th Cir. 1979). The court held that such result was “strongly suggested” by
 
 Nathanson v. National Labor Relations Board,
 
 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952).
 

 In
 
 Nathanson,
 
 the Board had ordered a company to pay certain employees back pay. Thereafter, an involuntary petition in bankruptcy was filed against the company. The Board filed a proof of claim in the bankruptcy proceeding for the back pay. The Supreme Court held that the Board was a creditor and that the back pay order was a provable claim, but that the claim was not a debt due to the United States and therefore not entitled to priority. The Court further held that the computation of the amount of the award was properly referred back to the Board by the bankruptcy court. In that connection, the Court said:
 

 [Wjhere the matter in controversy has been entrusted by'Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision. . . . It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with the authority to determine what measures will remedy the unfair labor practices.
 

 344 U.S. at 30, 73 S.Ct. at 83-84.
 

 However, the Supreme Court, in discussing the priority-question, also said:
 

 The Board argues that the interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment. Whether that should be done is a legislative decision.
 

 Id.
 
 at 28, 73 S.Ct. at 82-83. Bankruptcy Rule 11-44 was transmitted to Congress along with the other Chapter XI rules by Supreme Court order dated March 18, 1974, and, to the extent it was not disapproved, constitutes a “legislative decision.”
 

 The
 
 Bel Air
 
 court also considered its result harmonious with the 1978 Bankruptcy Law. A petition filed under the new act automatically operates as a stay of “the commencement or continuation of a judicial,
 
 administrative, or other proceeding
 
 against the debtor . . .” 11 U.S.C. § 362(a)(1) [emphasis added]. The legislative history expands somewhat on the automatic stay provisions:
 

 The scope of this paragraph is broad. All proceedings are stayed, including arbitration, administrative, and judicial proceedings. Proceedings in this sense encompasses civil actions and all proceedings even if they are not before governmental tribunals.]
 
 [1]
 

 However, the automatic stay does not operate in regard to “the commencement or continuation of an action or proceeding by a
 
 *12
 
 governmental unit to enforce such governmental unit’s police or regulatory power . . . 11 U.S.C. § 362(b)(4). This provision is also explained in the legislative history:
 

 Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
 
 [2]
 

 Neither the
 
 Nathanson
 
 case nor the 1978 Bankruptcy Act gives a crystal clear answer to whether or not Labor Board proceedings are automatically stayed by the institution by bankruptcy proceedings.
 

 The
 
 Bel Air
 
 court found it unclear whether the stay involved there was based upon Bankruptcy Rule 11-44 or was issued as an exercise of discretion. The court held that even if performed as a discretionary act, the stay was erroneously issued, saying:
 

 We think the court erred in issuing a stay solely on the basis of its determination that the Receiver was not an alter ego of the business’s former operators. Whether a new employer is an “alter ego” or a “successor” to an earlier employer is a question of substantive federal labor law, the resolution of which is committed to the Board and the courts that review its determinations.
 
 See, e. g., Golden State Bottling Co. v. NLRB,
 
 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973);
 
 Southport Petroleum Co.
 
 v.
 
 NLRB,
 
 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942). It is by no means clear in the event that the Board should determine that Bel Air committed unfair labor practices that it cannot enforce a remedial order against the Receiver,
 
 see,
 
 e.
 
 g., NLRB v. Coal Creek Coal Co.,
 
 204 F.2d 579 (10th Cir. 1953), especially in light of established policy against allowing employers to change their legal form as a means of evading their responsibility under the Act.
 
 See Southport Petroleum Co.,
 
 315 U.S. at 106, 62 S.Ct. at 455. The bankruptcy court erred in issuing a stay on the basis of an unresolved issue of federal labor law.
 

 611 F.2d at 1251.
 

 This reasoning can be applied as well in determining whether a Labor Board proceeding is subject to an automatic stay and probably presents a firmer basis in support of the Bel
 
 Air
 
 result than
 
 Nathanson
 
 or the 1978 Act. In
 
 Southport Petroleum Co. v. N. L. R. B., 315
 
 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942), the Supreme Court, although not dealing with the impact of bankruptcy at all, drew a distinction between liquidation and reorganization in applying Labor Board proceedings:
 

 Whether there was a
 
 bona fide
 
 discontinuance and a true change of ownership— which would terminate the duty of reinstatement created by the Board’s order— or merely a disguised continuance of the old employer, does not clearly appear, and accordingly is a question of fact properly to be resolved by the Board on direct resort to it, or by the court if contempt proceedings are instituted.
 

 Id.
 
 at 106, 62 S.Ct. at 456 [footnote omitted]. In
 
 N. L. R. B. v. Coal Creek Coal Co.,
 
 204 F.2d 579 (10th Cir. 1953), a similar distinction was drawn where a “federal receivership” rather than bankruptcy was involved.
 
 [3]
 

 
 *13
 
 Finally, if “the debtors’ position were to be adopted, Chapter XI would provide an instantly available, cheap and easy sanctuary from all state regulatory enforcement proceedings” and from all federal regulatory proceedings.
 
 [4]
 

 On balance, we agree with
 
 Bel Air
 
 that “[i]f regulatory proceedings threaten the assets of the estate, the decision to issue a stay can then be made on a discretionary basis.” 611 F.2d at 1251. But where, as here, it appears that the assets of the estate are not threatened and the company is being reorganized rather than liquidated, Bankruptcy Rule 11 — 44 shall not apply and regulatory proceedings of the National Labor Relations Board are not subject to the automatic stay provisions of that bankruptcy rule. This does not preclude imposition of a stay where a proper showing was made that the regulatory proceedings threatened the estate assets or that the bankruptcy or other proceedings would result in the liquidation of the company.
 

 Judgment reversed and case remanded for further proceedings.
 

 [1]
 

 . 95th Cong., 2d Sess., Sen.R. No. 95-989, p. 50 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5836. Virtually the same language also appears in H.R. No. 95-595, p. 340 (1977).
 

 [2]
 

 . 95th Cong., 2d Sess., Sen.R. No. 95-989, p. 52 (1978), U.S.Code Cong. & Admin.News 1978, p. 5838. Virtually the same language also appears in H.R. No. 95-595, p. 343 (1977).
 

 [3]
 

 . The court said:
 

 It is also suggested that the respondent is now in federal receivership and its assets in the process of liquidation; and that all questions of coercion and domination are therefore moot. If, as suggested (and apparently conceded in reply brief) the assets of the Company are to be sold and liquidated and all interest of the respondent therein extinguished, the questions of unfair labor practices and domination are of course moot. But the order of the Board is directed against the respondent, its officers, agents, successors and assigns, and if the respondent is to be operated through a receiver, or reorganized with respondent retaining an interest, either proprietary or managerial, the order of the Board with respect to the conceded unfair labor practices will be enforced . . .
 
 *13
 
 204 F.2d at 580; see also
 
 Johnson v. England,
 
 356 F.2d 44, 49 (9th Cir. 1966).
 

 [4]
 

 .
 
 In the Matter of Colonial Tavern, Inc.,
 
 420 F.Supp. 44, 46 (D.Mass.1976) (bankruptcy court in a Chapter XI proceeding has no authority under Rule 11-44 to stay liquor license suspension proceedings by municipality).