**In re GRAND SPAULDING DODGE, INC., an Illinois Corporation, Debtor.**

**Alan J. DIXON, Secretary of State, Plaintiff,**

v.

**GRAND SPAULDING DODGE, INC., an Illinois Corporation, Defendant.**

**No. 79 C 1416.**
**Bankruptcy No. 78 B 9619.**

United States District Court,
N. D. Illinois, E. D.

June 9, 1980.

William S. Shapiro, Asst. Atty. Gen., Chicago, Ill., for plaintiff.

Dannen, Crane, Heyman & Haas, Glenn R. Heyman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

This case presents the question of whether the bankruptcy court has jurisdiction under the 1898 Bankruptcy Act to enjoin a state regulatory proceeding not involving the assertion of any claim or lien against the bankrupt. A second question is whether the automatic stay provisions of the Bankruptcy Act apply to such a state regulatory proceeding.

■■■■ Appellant Illinois Secretary of State appeals from an order of the bankruptcy court requiring him to issue an automobile dealership license and certificate of authority to do business to Grand Spaulding Dodge, Inc. ("Grand Spaulding"). The Secretary contests the jurisdiction of the bankruptcy court and the basis for the order. We will vacate the order. We hold that the bankruptcy court has no summary jurisdiction [1] to enjoin the enforcement of valid state statutes where no "claim" or lien is being asserted against a "property" interest of the debtor. *In re Dolly Madison Industries, Inc.*, 504 F.2d 499, 504 (3d Cir. 1974). We also hold that Bankruptcy Rule 11–44 does not automatically stay a regulatory proceeding under a state's police powers.

The facts, briefly, are as follows. On September 21, 1978, Grand Spaulding was served with notice of a hearing to determine whether its Certificate of Authority for 1978 should be revoked for violating the Illinois Consumer Fraud and Deceptive Practices Act. Earlier, Grand Spaulding had entered into a consent decree relating to violations of the Consumer Fraud Act and had agreed to pay a certain sum of money. *In the Matter of Grand Spaulding Dodge*, 78 B 9619, February 27, 1979, Hearing Transcript at p. 3. In addition, one of the former officers of Grand Spaulding agreed not to participate in the affairs of the corporation for a period of three years. *Id.*

1. The term "summary" jurisdiction has caused considerable confusion for both courts and commentators. *See, e. g.,* Note, Scope of Summary Jurisdiction of the Bankruptcy Court, 40 Colum.L.Rev. 480, 490 n.2 (1940), noting that the issue of whether a court had summary jurisdiction had been litigated in every volume of the Federal Reporter and Federal Supplement from 1898 to 1940. The meaning of the term is linked with a historical distinction between "plenary" and "summary." 2 Collier on Bankruptcy ¶ 23.02 (14th ed.)

Prior to the enactment of the Bankruptcy Act of 1898, the bankruptcy courts had broad powers in law and equity to determine controversies relating to the estates of bankrupts. In 1898 the broad jurisdictional grant was limited by the addition of the phrase "except as herein provided." The exception refers to § 23 of the Bankruptcy Act, 11 U.S.C. § 46 and has been held to "withdraw from the bankruptcy courts jurisdiction of plenary suits which prior to bankruptcy the bankrupt might have brought in State courts." *In re Warren*, 387 F.Supp. 1395, 1399 (S.D.Ohio 1975). Instead, the bankruptcy courts have more limited "summary" jurisdiction under the Act. The summary nature of the bankruptcy court's jurisdiction also results in less procedural formality than plenary actions, with no right to a jury trial. Copenhaver, Summary Jurisdiction, 41 Journal of the

National Conference of Referees in Bankruptcy 108 (1967).

Bankruptcy courts have summary jurisdiction over (1) proceedings in bankruptcy; (2) controversies arising in proceedings in bankruptcy; and (3) other controversies between the bankrupt and a third party to which there is *consent* to jurisdiction. 11 U.S.C. § 11(a)(7); 2 Collier on Bankruptcy ¶ 23.02, p. 438 et seq. (14th ed.). Category (1) has come to be interpreted as matters relating to the administration of the bankrupt's estate. *Tamasha Town & Country Club v. McAlester Construction Finance Corp.*, 252 F.Supp. 80, 85 (S.D.Calif. 1966). Category (2) refers to disputes concerning the property of the bankrupt in the actual or constructive possession of the court. *Id.* at 85. Finally, category (3) involves situations where a party, by his own acts, is deemed to consent to the summary procedures of the bankruptcy court, thus waiving his right to an independent plenary suit in a court of appropriate jurisdiction.

Interestingly, the new Bankruptcy Act of 1978 abandons this terminology and such elusive concepts as "consent" and "possession," in favor of broader-based *in personam* jurisdiction over matters "aris[ing] in a bankruptcy case." H.R.Rep.No. 95–595, 95th Cong., 2d Sess., p. 445 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

■ The revocation hearing was originally scheduled for October 17, 1978. It was later reset for a date in January 1979. The record does not indicate who sought the continuance. On December 8, 1979, Grand Spaulding filed a Petition for Arrangement under Chapter XI of the Bankruptcy Act of 1898. An automatic stay issued under Bankruptcy Rule 11–44 [2] and 11 U.S.C. § 714 against any pending or future administrative proceedings. The Secretary on January 22, 1979, filed an adversary complaint in bankruptcy court seeking relief from the automatic stay. This complaint was never acted upon by the bankruptcy court. On February 22, 1978, pursuant to Illinois Revised Statutes ch. 95½, § 2–110, the Secretary refused to renew Grand Spaulding's Certificate of Authority to operate an automobile dealership for 1979.[3] This provision grants discretion to the Secretary to refuse to issue a license where the application's "genuineness, regularity, or legality . . ." is in doubt. In response, Grand Spaulding, as debtor, filed an "Emergency Application" (Grand Spaulding's brief at p. 1) with the bankruptcy court to direct the Secretary of State to renew the Certificate of Authority. Notice was apparently given orally to the Secretary on February 26, 1979, and the hearing occurred the following day.[4] Bankruptcy Judge Hertz signed the order submitted by Grand Spaulding on February 27, 1979, which provides in relevant part:

IT IS HEREBY ORDERED that Alan J. Dixon, Secretary of State, State of Illinois, be and he is hereby directed to forthwith issue a Dealers License and Certificate of Authority for the year 1979 to the Debtor-in-Possession herein, until the further order of this Court, or some other court of competent jurisdiction; and it is further

ORDERED that Alan J. Dixon, Secretary of State, State of Illinois, be and he is hereby directed not to interfere with the orderly administration of this Arrangement Proceeding during which the Debtor is operating its business under the jurisdiction of this Court.

In explanation of his ruling, Judge Hertz stated that the debtor must be permitted "an attempt to rehabilitate himself," (Bankruptcy Hearing Transcript at p. 6) and that the Secretary's denial of the Certificate of Authority would frustrate this effort. *Id.* at p. 5. This reasoning, when applied to a state's exercise of its police powers, sweeps too wide an arc.

■ Bankruptcy courts are courts of limited jurisdiction, *In Matter of Colonial Tavern, Inc.*, 420 F.Supp. 44, 45–46 (D.Mass. 1976), and they have no power to act beyond that expressly conferred by the Bankruptcy Act. *Riffe Petroleum Co. v. Cibro Sales Corp.*, 601 F.2d 1385, 1390 (10th Cir. 1979); *In re Oxford Marketing, Ltd.*, 444 F.Supp. 399, 402 (N.D.Ill.1978). The juris-

2. Bankruptcy Rule 11–44(a) provides:
    A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter 10 of this title, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

3. The Certificate of Authority for 1978 was to expire on February 28, 1979.

4. Because we vacate Bankruptcy Judge Hertz' order on a jurisdictional basis, we do not reach the other grounds raised by the Secretary of State in its appeal. Included among these

grounds are lack of proper notice, absence of *in personam* jurisdiction over Secretary of State Dixon, the "clearly erroneous" findings by the bankruptcy court in its order, and various errors of law committed by the judge. An examination of the record, however, reveals that no evidence was taken on the existence of an emergency and the presence of irreparable harm. Nor was any consideration given to the possibility of lifting the automatic stay and allowing the debtor to pursue the full range of administrative remedies available to him to contest the revocation or denial of his dealership license. In not ruling on the adversary complaint of the Secretary of State seeking to vacate the stay, Judge Hertz violated Rule 11–44(d) which specifically mandates that motions to modify or lift stays shall be heard on "the earliest possible date."

diction of the court under the 1898 Bankruptcy Act is basically *in rem*, and possession of the *res* is a prerequisite to the court's summary exercise of its power. *Callaway v. Benton*, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949); *In re Dolly Madison Industries Inc., supra*, 504 F.2d at 503. Congress did *not* intend to give bankruptcy courts jurisdiction over all controversies that in some way affect the debtor's estate. *In re Unishops*, 494 F.2d 689, 690 (2d Cir. 1974) (bankruptcy court did not have jurisdiction to enjoin any threatened or pending state actions against the debtor's subsidiaries). Nor did it intend to exempt businesses in reorganization from compliance with valid laws. *In Matter of Penn Central Transportation Company*, 347 F.Supp. 1356, 1366 (E.D.Pa.1972); *Burke v. Morphy*, 109 F.2d 572 (2d Cir. 1940). *See Gillis v. California*, 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934). It has been specifically held that the powers of the bankruptcy court do not include the power to interfere with the comprehensive regulatory laws of a state. *In Matter of Colonial Tavern, Inc., supra*, 420 F.Supp. at 45 (bankruptcy court in a Chapter XI proceeding has no authority under Rule 11–44 to stay liquor license suspension proceedings by municipality). The Seventh Circuit recently declared:

> Chapter XI [of the 1898 Bankruptcy Act was not intended to] provide an instantly available, cheap and easy sanctuary from all state regulatory enforcement proceedings and from all federal regulatory proceedings.

*In Matter of Shippers Interstate Service, Inc.*, 618 F.2d 9, at p. 13 (7th Circuit, 1980) (filing of a Chapter XI petition under the 1898 Bankruptcy Act does not automatically stay an unfair labor practice proceeding).

The decisions in *Gillis v. California, supra*, and *In the Matter of Dolly Madison Industries, Inc., supra*, are particularly relevant to the bankruptcy court's jurisdictional basis in the instant case. In *Gillis*, the receiver of a corporation undergoing reorganization requested the district court sitting as a bankruptcy court to sanction its noncompliance with a California licensing statute. The receiver contended that without such an exemption he would be unable to continue operating the business. The Supreme Court held that the court was powerless to authorize noncompliance with the state provision, regardless of the consequences. 293 U.S. at 65–66, 55 S.Ct. at 5–6. The court reasoned that "[w]e are not dealing here with the acknowledged power of courts to protect property in their custody." 293 U.S. at 67, 55 S.Ct. at 6.

*In Matter of Dolly Madison Industries, Inc.* held that although property of a corporate debtor may have been affected by the action of the Virginia Corporation Commission revoking its certificate of authority to do business in the state, the revocation did not constitute a "claim" against the debtor's "property." 504 F.2d at 503–504. The court declared that absent such a "claim," the bankruptcy court was without summary jurisdiction in a reorganization proceeding to order the Commission to reinstate the debtor's certificates of authority to do business. *Id.* at 504. In that case, the certificates of authority were revoked because of the company's failure to file required annual reports and to pay related fees for two consecutive years. *Id.* at 502.

■ The bankruptcy judge overstepped his authority in the instant case. Here, the state interest implicated was the avoidance of fraud by automobile dealers. Notwithstanding the gravity of this interest, the judge ordered the continuation of Grand Spaulding's business without any finding as to whether the company was in fact acting or had acted in a fraudulent manner. The bankruptcy judge apparently intended to arrogate to himself the power to hear any complaints of fraud, matters within the established police powers of the state. The judge commented that:

> . . . [I]f you [Secretary of State] or somebody in the State of Illinois has some complaint about the conduct of the debtor-in-possession, this is the place to come, . . . . *In the Matter of Grand Spaulding Dodge*, Bankruptcy Hearing, February 27, 1979, Transcript at p. 6.

. . . And if somebody has some complaints about the conduct of the debtor, since the debtor-in-possession is really an officer of this Court, they sure know where to find us. *Id.* at p. 5.

There is simply no basis in statute, rule or case law for such intervention by the bankruptcy court.

■ A review of the relevant statutory provisions under the 1898 Bankruptcy Act further supports the conclusion that the Secretary of State is not asserting any "claim" or "lien" against the debtor in the instant case. The terms are discussed in the Advisory Committee's Note to Bankruptcy Rule 11–44, which authorizes the suspension of all actions during the pendency of a bankruptcy proceeding:

> This rule supplements and reinforces the policy of §§ 11a, 311 & 314 of the Act [sections 29(a), 711 and 714 of this title]. Section 11a [section 29(a) of this title] provides in terms for a mandatory stay of all actions founded on dischargeable *claims* which are pending against the debtor when the petition is filed, and § 314 [section 714 of this title] authorizes the stay of pending actions and of the commencement of actions whether or not founded on dischargeable claims. Section 314 [section 714 of this title] also authorizes the stay of any act or proceeding to enforce any *lien* on the property of the debtor. The term "lien" is used in this rule to indicate a consensual security interest in person or real property, a lien obtained by judicial proceedings, a statutory lien, or any other variety of charge against property securing an obligation. (Emphasis added)

The term "claim" is not defined specifically in the Bankruptcy Act of 1898. The new Bankruptcy Act defines the term more broadly than it was interpreted under the old Act. *See* Section 101(4) of Bankruptcy Act of 1978; 2 Collier on Bankruptcy (15th ed. 1979), ¶ 101.04 at pp. 101–15. As so defined, "claim" means

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Even under this broad definition, it cannot be said that the Illinois Secretary of State's interest under its police powers in revoking, suspending or failing to renew Grand Spaulding's dealership license constitutes a "claim" against the property of the debtor. Nor can it be said that the Secretary of State's interest is a "lien" against the estate, as defined in the Advisory Committee note.

The court in *Dolly Madison Industries, supra,* distinguished *Stout v. Green,* 131 F.2d 995 (9th Cir. 1942), one of the principal cases relied upon by Grand Spaulding, on the basis that it involved a lien or other "claim" by the state against the property of the debtor. 504 F.2d at 504. In *Stout,* California state liquor officers had threatened to seize a still of the bankrupt for the nonpayment of a license fee. There also was a tax lien claim asserted against the still by the United States in the bankruptcy court. The court there upheld the issuance of an injunction against state liquor officers to preserve the debtor's property for ultimate disposition of these competing claims.

Unlike the situation in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), another case cited by Grand Spaulding, no issue of federal preemption is involved in the instant case. In his fraud investigation, the Illinois Secretary of State is operating in a separate regulatory sphere, independent of the federal bankruptcy laws and not in "frustration" of them. 402 U.S. at 649–652, 91 S.Ct. at 1711–1713. In *Perez,* the Supreme Court invalidated a state statute which provided for suspension of a person's driver's license for failure to satisfy an automobile accident judgment discharged in bankruptcy.

The Bankruptcy Act of 1978, while not applicable to this action, provides additional support for the proposition that the power of the bankruptcy court does not extend to interference with a state's exercise of its police powers. While a petition filed under the new act automatically operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other proceeding against the debtor . .," 11 U.S.C. § 362(a)(1), specifically exempted from this automatic stay is

> an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. § 362(b)(4). In fact, the legislative history of this provision covers the exact regulatory activity of the Secretary of State in this case:

> Thus, where a *governmental unit* is suing a debtor to *prevent* or *stop violation of fraud*, . . . or similar police or regulatory laws, . . . the action or proceeding is not stayed under the automatic stay.

Senate Rep. No. 95–989, 95th Cong., 2d Sess., p. 52 (1978) U.S.Code Cong. & Admin. News 1978, pp. 5787, 5838 (emphasis added); *see also* H.R.Rep. No. 95–595, 95th Cong., 2d Sess., p. 343 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963. Although the Secretary admittedly is not "suing" the debtor, the parallel is striking.

▮▮▮▮ Judge Hertz' order compelling the Illinois Secretary of State to issue an automobile dealership license to Grand Spaulding is vacated.[5] The bankruptcy court had no summary jurisdiction to enter the order. The order was not based on the court's power over the administration of the

debtor's estate or on its power to preserve the debtor's property. 2 Collier on Bankruptcy ¶ 23.03 at p. 446 (14th ed.); *In re Dolly Madison Industries, Inc., supra,* 504 F.2d at 504–505.

Although not directly involved in this appeal, the automatic stay which issued in this case against all administrative proceedings remains in effect and might be thought to prevent any future action by the Secretary following the decision of this court. The Secretary had sought relief from this stay in the bankruptcy court, but, as already noted, this adversary complaint was never acted upon.

We now vacate the automatic stay insofar as it relates to any action by the Secretary concerning the issuance, denial or renewal of an automobile dealership license and a certificate of authority. This result is consistent with numerous decisions: *In Matter of Shippers Interstate Service, Inc., supra,* 618 F.2d 9, (7th Cir. 1980) (automatic stay vacated against unfair labor practice proceeding despite possible back pay order against bankrupt); *In Matter of Colonial Tavern, Inc., supra* (stay lifted so that liquor license suspension proceedings by municipality could proceed); *In Matter of Canarico Quarries, Inc.,* 466 F.Supp. 1333 (D.Puerto Rico 1979) (lifting stay against Puerto Rican Environmental Quality Board enforcement proceeding to prevent debtor from operating its business in contravention of environmental laws). *Compare In re Joydon, Inc.,* 17 Collier Bankr.Cas. 86, 4 Bankr.Ct.Dec. 166 (Ref., N.D. Ohio 1978) (similar Bankruptcy Rule 401 stay held not to apply to an action by the Department of Labor to redress violations by bankrupt of

---

**5.** In vacating this order, we agree with appellant Secretary of State that its filing of an adversary complaint before the bankruptcy court seeking a modification of the automatic stay was for a limited purpose. By no leap in logic could this filing or appearance give the bankruptcy court jurisdiction to disrupt the state regulatory scheme for preventing fraud in automobile dealerships.

We also note that although the issue before the bankruptcy court concerned the issuance and renewal of Grand Spaulding's new automobile dealership license and Grand Spaulding is now operating as a used automobile dealer, the controversy is not moot. Chapter 95½, § 5–102(a) of the Illinois Revised Statutes authorizes the holder of a new vehicle dealer license to sell and engage in the business of selling and dealing in used vehicles without having a separate used vehicle dealer license. Inasmuch as Grand Spaulding was never issued a used auto dealer license, its continuation in business has been in reliance upon the order of the bankruptcy court reinstating its new auto dealer license.

federal minimum wage act). Moreover, it directly follows the approach of the new Bankruptcy Act of 1978 in exempting proceedings enforcing a state's police powers from coverage of the automatic stay. See 11 U.S.C. § 362(b)(4). One court closely analyzing the legislative history and case law under Rule 11–44 of the Bankruptcy Act of 1898 concluded that the provision was clearly not intended "to subvert the valid police powers of the states . . .." *In Matter of Colonial Tavern, Inc., supra,* 420 F.Supp. at 46. This conclusion finds support in the House Report on the new Bankruptcy Act, which criticized the "overuse of the stay in the area of governmental regulation" and noted that the bankruptcy court must protect "the legitimate interests of the State as well as of the estate . . . ."[6] House Report No. 95–595, 95th Cong., 1st Sess. pp. 174–175 (1977), U.S.Code Cong. & Admin.News 1978, p. 6135.

Finally, an automatic stay of the state action in this case conflicts with a federal statute. 28 U.S.C. § 959 provides that the trustee, receiver or debtor-in-possession "shall manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which the property is situated . . .." Judge Hertz in allowing the automatic stay to issue and remain in effect did not ensure compliance with the state law concerning fraudulent automobile transactions. While the purpose of the stay provision is to rehabilitate the debtor, such rehabilitation cannot be done "outside the law." *In Matter of Canarico Quarries, Inc., supra,* 466 F.Supp. at 1339. The court in *Canarico Quarries* lifted the stay against the enforcement of permit regulations by the Puerto Rican Environmental Quality Board, noting that the stay violated 28 U.S.C. § 959:

To authorize [the] debtor to operate its business without obtaining a permit from appellant, under the protection of Rule 11–44(a), violates Section 959, supra. To allow such violation of state law is not within the jurisdiction of the Bankruptcy Court. Chapter XI Rules were meant to be procedural in nature and were not intended to enlarge or modify substantive rights.

466 F.Supp. at 1339 (citations omitted).

■ To avoid any possible confusion as to the state of the administrative proceedings in the aftermath of our decision, we find that the 20 day filing period for a hearing on the "suspension, revocation or denial of the issuance of a license," pursuant to Ill.Rev.Stat. ch. 95½, § 2–118, was tolled by the automatic stay order. Grand Spaulding could justifiably have relied on the December 8, 1978, order staying all administrative proceedings in not attending the rescheduled January 1979 revocation hearing or in not seeking administrative review of the Secretary's February 22, 1979, denial decision. Thus it cannot be said that Grand Spaulding waived any right it had to a hearing to contest the revocation of its automobile dealership license.[7]

The orders of the bankruptcy court are vacated as indicated and the cause is remanded to the bankruptcy court for further proceedings consistent with this opinion.

**6.** We need not consider whether Grand Spaulding's hope or expectation of the reissuance of its dealership license constitutes a "property interest," since as we have already noted, the Secretary is not asserting a "claim" or "lien" against the debtor or his estate.

**7.** We find this result consistent with a passing reference in *People ex rel. Carpentier v. Goers,* 20 Ill.2d 272, 170 N.E.2d 159, 163 (1960), cited by Grand Spaulding. The Supreme Court of Illinois noted: "[W]hile the administrative review proceeding is pending, the grounds upon which the [license] revocation was based may not serve as the basis for a denial of a license for a subsequent period." 170 N.E.2d at 163. The important concern, reflected both in the quote and the instant case, is that Grand Spaulding be given an opportunity for a hearing, to present evidence and rebut the charges serving as the basis for the revocation or denial of its license.