In re WILNER WOOD
PRODUCTS CO., Debtor.

WILNER WOOD PRODUCTS
CO., Plaintiff,

v.

STATE OF MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION and
Dean C. Marriott, Defendants.

Bankruptcy No. 90–20099.
Adv. No. 90–2078.

United States Bankruptcy Court,
D. Maine.

June 14, 1990.

See also 119 B.R. 345.

Gregory D. Woodworth, Jacob A. Manheimer, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for debtor.

Dennis J. Harnish, Asst. Atty. Gen., Augusta, Me., for State defendants.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.[*]

Before the Court is the State of Maine, Department of Environmental Protection's ("DEP") Motion to Dismiss the Complaint of the debtor, Wilner Wood Products Co. ("Wilner"). In this adversary proceeding, the debtor seeks an order of the Bankruptcy Court staying the effectiveness of a May 15, 1990 DEP Order denying the debtor's application for renewal of its air emission license. Both parties have submitted memoranda in support of their respective positions, mainly on the question whether the Bankruptcy Court has jurisdiction and/or authority to enjoin state regulatory action during an ongoing Chapter 11 case.

Upon consideration of the oral arguments of counsel at the May 18, 1990 hearing, and their written submissions, we conclude that the debtor has stated a claim upon which relief can be granted [1], and for

[*] For the District of Rhode Island, sitting by designation.

1. The DEP raises a number of additional grounds in support of its Motion to Dismiss: (1) lack of subject matter jurisdiction, FED.R.CIV.P. 12(b)(1); (2) insufficiency (lack) of service of process, FED.R.CIV.P. 12(b)(5); and (3) lack of personal jurisdiction over the State Defendants, FED.R.CIV.P. 12(b)(2). These grounds were considered, and found to be without merit, at the May 18, 1990 hearing and consequently, we do not readdress them here. In addition to the

the reasons set forth below, DENY the DEP's Motion to Dismiss.

On a motion to dismiss, courts must take the well-pleaded facts in the complaint as true in determining whether the plaintiff has stated a claim upon which relief can be granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Applying this standard to the instant dispute, we consider as true the debtor's allegation that it has a valid renewal application pending, and that its objective is to maintain the status quo during the administrative appeal of the May 15, 1990 DEP Order.

The focus of our consideration then, is whether this Court has jurisdiction to stay the effect of a state environmental order regarding air emission standards, pending the debtor's appeal of said Order.

In order to obtain a preliminary injunction a party must satisfy four elements: (1) the likelihood of success on the merits; (2) irreparable injury to the movant; (3) the balance of equities favors relief; and (4) the public interest favors relief. *Hypertherm, Inc. v. Precision Products, Inc.*, 832 F.2d 697 (1st Cir.1987); *In re Security Gas & Oil, Inc.*, 70 B.R. 786, 793 n. 3 (Bankr.N.D.Cal.1987) (other citations omitted). In addition, the holding in *In re Security Gas & Oil, Inc.*, 70 B.R. 786, 792 (Bankr.N.D.Cal.1987), that Section 105(a) authorizes the bankruptcy court to issue discretionary injunctive relief in appropriate circumstances[2], is relied upon by Wilner. *See also, The National Mediation Board v. Continental Airlines Corp. (In re Continental Airlines)*, 50 B.R. 342, 357 (S.D.Tex.1985), aff'd, 790 F.2d 35 (5th Cir.1986). Moreover, we recognize the principle that "[i]ssuance of an injunction under section 105 is appropriate where the threatened state activity would unduly interfere with the proper functioning of the Bankruptcy Code. In such circumstances, state law is

preempted by the Bankruptcy Code." *In re Security Gas & Oil, Inc., supra* at 793.

In considering whether the debtor has stated a claim under Section 105, "the likelihood of success on the merits logically must refer to whether the debtor can show that enforcement of the state laws will unduly interfere with the bankruptcy adjudication. The concept of success on the merits is not limited to whether there is a defense to the threatened action under nonbankruptcy law." *In re Security Gas & Oil, Inc., supra* at 793, n. 3.

A nine part test has been established to help weigh the policies of the Bankruptcy Code against the State's health and welfare concerns:

(1) The immediacy, severity, and certainty of the danger created by the environmental hazard subject to the clean-up order;

(2) The extent to which debtor is uniquely able to affect the clean up;

(3) The extent to which creditor priorities would be distorted by enforcement of the clean-up order;

(4) The effect of the enforcement order on the likelihood of a successful reorganization, and whether a successful reorganization will substantially increase the payoff to creditors and/or preserve jobs;

(5) How long the bankruptcy case has been open;

(6) How long the State has delayed in attempting to force debtor to clean up the environmental hazard;

(7) The extent to which debtor continues to operate a similar business in the State;

(8) The extent to which orders other than full prohibition of enforcement of clean-up orders can better accommodate the State health and welfare concerns with the policies of the Bankruptcy Code; and

reasons given in our May 18, 1990 bench decision, we also agree with, and adopt herein as to these issues only, the grounds stated by the debtor in its memorandum in opposition to the Motion to Dismiss. Also, we believe that a number of Mr. Harnish's technical objections have been rendered moot under our June 13,

1990 Order vacating several prior orders of this Court.

**2.** Section 105(a) provides, in relevant part, that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

(9) Any other considerations relevant to whether injunctive relief should be granted, including the good or bad faith of the parties.

*In re Security Gas & Oil, Inc., supra* at 796–797 (other citations omitted).

■ While most of these criteria apply in varying degrees in the present case, we find items 1, 4, 5, 6 and 9 to be particularly relevant and applicable to the facts in the instant dispute. The environmental concern at issue here, the ultimate validity of the debtor's air emission license, has been pending for *ten years*, with no discernable enforcement action by the State until shortly before Wilner's Chapter 11 filing. For the State to characterize its alleged concern as "immediate", "severe" and involving "certainty of danger", after years of admitted inaction, is ludicrous at best, and borders on reckless and willful when viewed in light of the rights of creditors, employees, the debtor, and the public interest. We find, based upon the record of the May 18, 1990 hearing, that the debtor is actively working to comply with the DEP's licensing requirements and, in good faith, has attempted to negotiate with the DEP over the last several months. The debtor has also taken the necessary steps to retain an environmental engineering firm to assist it in achieving compliance. These positive efforts should not be frustrated and/or wasted because of the DEP's sudden insistence on shutting down the business of the debtor, after a decade of bureaucratic inattention. This is especially true during the administrative appeal, which we understand is a relatively speedy process, and in the debtor's very early stage of reorganization in Chapter 11 [3].

Upon consideration of these factors, including the State's legitimate, but belated concern for compliance with its air quality standards, we find that enforcement of the DEP Order, at this time, will, without doubt, unduly and unnecessarily interfere with Bankruptcy adjudication and adminis-

tration of this case. Accordingly, we conclude as a matter of law that we have jurisdiction to enjoin enforcement of the DEP's May 15, 1990 Order, pending the debtor's appeal which is being prosecuted pursuant to the State's own administrative procedures. Given this determination, we rule that the debtor has successfully stated a claim upon which relief can be granted.

The cases relied upon by the State in its Reply Memorandum are either inapplicable or distinguishable from the facts in the instant dispute. Of the four cases cited by Mr. Harnish, two address the issue of whether the Section 362 automatic stay applies to a regulatory proceeding under a state's police power, *see*, i.e., *In re Grand Spaulding Dodge, Inc.*, 5 B.R. 481 (N.D.Ill. 1980); *In the Matter of Colonial Tavern, Inc.*, 420 F.Supp. 44 (D.Mass.1976); and two deal with whether the Court can impose an affirmative injunction on a State to take some specific action, *see*, i.e., *In the Matter of Dolly Madison Industries, Inc.*, 504 F.2d 499 (3rd Cir.1974); *In the Matter of Canarico Quarries, Inc.*, 466 F.Supp. 1333 (D.P.R.1979); *In re Grand Spaulding Dodge, Inc., supra*. Neither of these issues are present in the matter before this Court. The exercise of jurisdiction here is narrowly limited to maintaining the status quo during the debtor's appeal of the DEP's Order, and not to impose any affirmative injunction against the State. Furthermore, we understand that the debtor is asking for relief pursuant to Section 105 of the Code, and does not argue that the automatic stay under § 365 prohibits the DEP from rendering its May 15, 1990 Order. Unlike the Courts in *In re Grand Spaulding Dodge, supra*, and *In the Matter of Canarico Quarries, Inc., supra*, we specifically refrain from even purporting to assume/exercise jurisdiction over the merits of the issuance of the disputed license, or to substitute our judicial judgment in place of the Maine Board of Environmental Protection. We would defer entirely to the expertise of that body, even if there were

---

**3.** The debtor also asserts in its complaint that unless it is given a stay of the DEP's May 15, 1990 Order pending appeal, it will be forced to shut down operations, terminate all employ-

ment and liquidate the estate, to the great detriment of creditors and employees. This, all within four months of its filing for relief under Chapter 11 of the Bankruptcy Code.

concurrent jurisdiction—and we recognize that there is not.

In support of its contention that the Bankruptcy Court may not stay enforcement actions by the State, one of the cases it relies upon, *In the Matter of Canarico Quarries, Inc., supra* at 1338, actually acknowledges that "the entry of such an order [to stay proceedings] rests with the sound discretion of the District Court.", and that "the Supreme Court set out guidelines for a court to consider in granting stays." Upon careful consideration, we conclude that the State's argument that this Court has no jurisdiction to take such action, is contrary to even its own cited authority. In further distinguishing the cases, we also note that one of the reasons that the District Court dissolved the stay in *Matter of Canarico* was that "the District Court (sic) has entered an order which could place this case in limbo for years." *Id.* Our intentions in this case were and are entirely to the contrary.

■ An additional issue raised is whether this Court can enjoin the assessment of penalties against the debtor, pending its appeal of the DEP Order. At the May 18, 1990 hearing, the State represented that it would not, and in fact could not attempt to collect civil fines against the debtor until the entry of an appropriate judgment, and that, therefore, the debtor's concern in that regard was more illusory than real. (TR., p. 85.) Further, since the debtor's appeal of the DEP Order has yet to be heard and decided, and notwithstanding Mr. Harnish's optimism, it is not known at this time whether the State will ultimately prevail, or whether any fines will eventually be assessed against the debtor. For this reason, i.e. absence of ripeness, we are not required to, and therefore do not decide this issue at the present time.

Accordingly, for the reasons discussed above, it is ORDERED that the State of Maine, Department of Environmental Protection's Motion to Dismiss is DENIED. Although the within motion is denied with prejudice, it is the Court's intention to mon-

itor the debtor's progress, independently of the DEP's present intense interest in the case [4], and in that regard a status conference is scheduled for August 17, 1990, at which time the debtor shall update the Court and interested parties as to all aspects of the case, including a proposed plan of reorganization, and including the status of the DEP appeal.

Enter Judgment accordingly.

---

**4.** After all, it is well known that the State has let some matters lie fallow for long periods, and we

cannot be sure that this sleeping giant will not go to sleep again.