**In re KING MEMORIAL HOSPITAL, INC. and Florida Hospital Group, Inc., Debtors.**

**Robert A. SCHATZMAN, as Co-Trustee for King Memorial Hospital, Inc. and Florida Hospital Group, Inc., Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, STATE OF FLORIDA, Defendant.**

**Bankruptcy Nos. 79–01220–BKC–SMW, 79–01221–BKC–SMW and 80–0013–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

June 24, 1980.

---

Eric J. Haugdahl, Asst. Gen. Counsel, Dept. of Health & Rehabilitative Services, Tallahassee, Fla., Gary C. Matzner, Sp. Counsel for Co-Trustees.

Robert A. Schatzman, Miami, Fla., Co-Trustee, pro se.

Justin P. Havee, Co-Trustee.

Rolando Sanchez-Medina, President of King Memorial Hospital.

Dr. O. R. Gonzalez, President of Martin Luther King, Jr. Medical Center, Inc.

## FINDINGS OF FACT

## CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

The plaintiff, Robert A. Schatzman, as Co-Trustee of King Memorial Hospital, Inc. and Florida Hospital Group, Inc., filed a Verified Complaint as an Adversary Proceeding within the Meeting of Bankruptcy Rule 701(5). The plaintiff is seeking an order for a permanent injunction restraining the defendant, Department of Health and Rehabilitative Services, State of Florida, from taking or filing an action to forfeit the exemption from a Certificate of Need review of the debtor, King Memorial Hospital, Inc., pursuant to Florida Statutes Section 381.493–.498.

On or about November 30, 1979, the Trustee received by certified mail a determination by the defendant, Department of Health and Rehabilitative Services, State of Florida, that the debtor-hospital had forfeited its exemption from Certificate of Need review to construct a 126-bed hospital and providing the debtor-hospital thirty (30) days in which to request an administrative hearing, pursuant to Chapter 120 Florida Statutes, the Florida Administrative Procedures Act. The plaintiff Trustee, Robert A. Schatzman, responded with a Suggestion of Bankruptcy reciting the automatic stay provision of Section 362 (11 U.S.C. § 362) of the Bankruptcy Code. On January 17, 1980, the defendant responded with an Order extending the time for the plaintiff Trustee to respond to the defendant's determination.

By order dated the 25th day of January, 1980, this Court, upon application of the plaintiff, issued a temporary restraining order directing the defendant to show cause why, pending a hearing, and determination of the application of the debtor-hospital, a preliminary injunction should not be issued enjoining the defendant from entering any orders in the matter of King Memorial Hospital, Inc. with regard to declaring that the exemption for the Certificate of Need review, pursuant to Florida Statutes Section 381.493–.498, has been forfeited. By order entered the 14th day of February, 1980, this Court ordered upon the joint Stipulation of the parties that, pending final judgment in this Adversary Proceeding the defendant, Department of Health and Rehabilitative Services, State of Florida, is enjoined from entering any orders in the matter of King Memorial Hospital, Inc. with regard to declaring that the exemption from the Certificate of Need review, pursuant to Florida Statutes Section 381.493–.498, has been forfeited. A Motion for Partial Summary Judgment was filed and set by the defendant for a hearing on the 24th day of April, 1980, and for which the defendant failed to appear. A final hearing was heard on this matter on May 6, 1980, in Miami, Florida.

The plaintiff contends that the debtor-hospital is entitled to an automatic stay of the cause of action brought by the defend-

ant, pursuant to Section 362 of the United States Bankruptcy Code (11 U.S.C. § 362). In the alternative, the plaintiff contends that the debtor-hospital is entitled to a stay of the proceedings under Section 105 of the Bankruptcy Code (11 U.S.C. § 105) which provides, inter alia, that this Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

The defendant, Department of Health and Rehabilitative Services, State of Florida, contends that the debtor-hospital is not entitled to the benefit of the stay provisions of Section 362 of the Code in that Section 362(b)(4) provides that the filing of a petition . . . does not operate as a stay . . . of the commencement or a continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## FINDINGS OF FACT

1. The plaintiff is duly qualified and acting in his capacity as Trustee.

2. This is an Adversary Proceeding within the meeting of the Bankruptcy Rule 701(5).

3. An exemption from the Certificate of Need laws was established by the debtor-hospital, pursuant to Florida Statute 381.-497 (1973), for the construction of a 126-bed general hospital in that land was acquired by the debtor for the proposed hospital and preliminary construction plans were filed with the defendant prior to July 1, 1973.

4. The defendant, by and through its Office of Community Medical Facilities, is the agency of the State of Florida that has the responsibility and duty for health planning in Florida and particularly for the regulatory enforcement of the Certificate of Need program which includes Certificate of Need exemptions established pursuant to Florida Statute 381.497.

5. Since the issue before the Court is a determination as to whether or not the actions of the defendant should be stayed and not the merits of the case, the Court will not make any determination as to the facts concerning whether or not the plaintiff has a right to go forward with its plans to construct a hospital or whether the defendant is, in fact, correct in that the debtor has forfeited its rights under the Certificate of Need laws. However, from the testimony and from the exhibits submitted, if the plaintiff would go forward in its attempt to build a 126-bed hospital, it would do so at the risk of being denied a hospital license (381.493–.498).

6. The determination of the defendant, Department of Health and Rehabilitative Services, State of Florida, would unduly interfere and impede these Chapter 11 proceedings and prejudice the ability of the Trustee to prepare and offer a plan of arrangement.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this proceeding and over the parties, 28 U.S.C. Section 1471(a), (b), (c) and (e).

2. The debtors, having filed a petition on October 2, 1979, this case is subject to the United States Bankruptcy Code, Title XI, which became effective on October 1, 1979 (Pub.L. No. 95–598 [1978] Title IV Sec. 202[a]).

3. Section 362 of the Code (11 U.S.C. § 362) operates as a stay, applicable to all entities of: (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate.

The automatic stay, according to its legislative history, is one of the fundamental debtor protections provided by the Bank-

ruptcy Laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy (House Report No. 95–595, 95th Cong. 1st Sess. [1977] 340, U.S.Code Cong. & Admin.News 1978, p. 5787; Senate Report No. 95–989, 95th Cong. 2nd Sess. [1978] 49, U.S. Code Cong. & Admin.News 1978, p. 5787).

The automatic stay provision is not without its exceptions, as aptly pointed out by the defendant. Section 362(b)(4) provides that the filing of a petition . . . does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a government unit to enforce such governmental unit's police or regulatory power.

The Bankruptcy Code, having only become effective this past October, it is incumbent upon this Court to review the legislative history of Section 362 of the Code in order to determine the scope and application of the Code to the issues before the Court.

Honorable Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the House Committee of the Judiciary, explained Congress' intent in enacting Section 362(b)(4) by stating:

> "Section 362(b)(4) indicates that the stay under Section 362(a)(1) does not operate to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This Section is intended to be given a narrow construction in order to permit governmental units to pursue to protect the health and safety and not to apply to actions by a governmental unit to protect the pecuniary interest in property of the debtor or property of the estate. (124 Congressional Record H11089, 11C U.S. Code Congressional Administrative News 660–61 [December 1978])"

An excerpt from House Report No. 95–595 indicates that:

> "Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit injunction and enforcement of injunction, and to permit the entry of a money judgment but does not extend to permit enforcement of a money judgment. Since the assets of a debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors."

An analysis of the legislative history of Section 362(b)(4) was applied to the facts of a Bankruptcy Act case. *In re Saugus General Hospital, Inc., Debtor, Philip L. Sisk, Receiver/Plaintiff vs. Commonwealth of Massachusetts, Department of Public Health, Defendant, 651 Collier Bankruptcy Cases 19*, the Plaintiff/Receiver in a Chapter 11 matter sought a judgment that termination of the debtor-hospital's operating license by a state public health agency had violated the automatic stay of Bankruptcy Rule 11–44(a) and sought a declaration that revocation of the license violated the Court's injunction prohibiting interference with property held by the Receiver.

The facts of the case indicate that Saugus General Hospital, Inc. was a small, privately-owned hospital which was advised on August 30, 1978, by the Massachusetts Department of Public Health to discontinue admitting patients until certain administrative deficiencies, such as inadequate number of nurses, had been corrected. Two days later, on September 1, 1978, an involuntary petition in bankruptcy was filed against the

hospital. The proceedings were subsequently coverted to Chapter 11 and on September 6, 1978, the hospital administration discharged its remaining patients and completely shut down. Two days later, on September 14, 1978, the Department of Public Health notified the hospital that its license to operate was terminated as of that date citing a section of the State statute which provided that a hospital abandons its license by discontinuance of operations. Thus, the Department had considered the hospital's discharge of its patients on September 6, 1978, as a relinquishment of its license. The Plaintiff/Receiver in the Chapter 11 proceeding sought a judgment that termination of the debtor-hospital's operating license by a state public health agency had violated the automatic stay provision of Bankruptcy Rule 11–44(a) and sought a declaration that revocation of the license violated the Court's injunction prohibiting interference with property held by the Receiver. While this case was subject to the Bankruptcy Act and not the Code, Judge Gabriel in Footnote # 1 at Page 655 discussed at length what his determination would have been had the Code been in effect. In tracking a narrow interpretation to exempt from the automatic stay only those matters which are needed to protect the public health and safety and not to exempt those matters which are related to the financial difficulties or the pecuniary interest in the property of the debtor, Judge Gabriel found that . . . "notwithstanding the limitation on the scope of the stay to non-police power activity, the new Act (Code) still may permit the use of an injunction to restrain action by a regulatory agency. Accordingly, it appears that the 1978 Bankruptcy Code would permit the restraint of the Department's revocation in the present case."

Following the guidelines of the narrow interpretation as laid down by Congress and in accord with the interpretation given in the Saugus General Hospital case, the determination by the defendant, Department of Health and Rehabilitative Services, State of Florida, that the debtor-hospital, King Memorial Hospital, Inc., has forfeited its exemption from Certificate of Need law, is subject to the automatic stay provision of Section 362 and is not the exercise of a governmental unit's police power to protect the public health and safety.

The testimony and the exhibits submitted by the defendant indicate that, had there been a need of urgent protection of the public health and welfare of the citizens of Florida, the defendant could have initiated its administrative determination as early as July 2, 1979. This was not the case. No action was taken by the defendant until on or after November 15, 1979, almost forty-five (45) days after the debtor filed its petition under the protection of the Bankruptcy Code and almost 4½ months from the first date the defendant could have initiated action. No testimony was given by the defendant's witness that the protection of the public health or welfare was as stake. The Administrative Complaint, submitted by the defendant as an evidentiary exhibit, indicates that the defendant had made site visits in the months of June, July, August, September, October and November of 1979. The health and welfare of the citizens of the State of Florida do not appear to be the overriding factor in the determination made by the defendant. Rather, it was the insolvency and need for reorganization that prevented the hospital from taking any affirmative action to respond to the defendant, Department of Health and Rehabilitative Services, State of Florida. There can be no purpose in the defendant making site visits in October or November, 1979, when the debtor hospital is already in bankruptcy proceedings without sufficient funds to operate the 27-bed hospital. Once having filed a voluntary petition, it would seem unimaginable that the debtor would have funds to construct a 126-bed facility. Certainly, but for its insolvency, the debtor-hospital could have made a conscious choice as to whether or not it wanted to build the new facility and decide whether or not it was in compliance with State law.

Additionally, the state statutes put before this Court do not appear to be enacted to protect the health and welfare of its

 

constituents. The Health Facilities and Health Services Planning Act, Sections 381.493–381.497, known as the Health Facilities and Health Services Planning Act, was enacted by the legislature to stimulate the establishment and continuous reevaluation of community-oriented health goals by providers, consumers and public agencies; to assist in the rational examination of alternative methods of achieving those goals; and to aid in their achievements through the most effective means possible within the limits of available resources (381.493[1] and [2]).

4. The plaintiff Trustee has argued in the alternative that Section 105 of the Code (11 U.S.C. § 105) would be applicable. This Section provides that:

(a) The Bankruptcy Court may issue any order, process or judgment necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding Subsection (a) of this Section, a Bankruptcy Court may not appoint a Receiver in a case under this title.

Section 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case (15 Collier's on Bankruptcy 105–1). The legislative history of the Section indicates that it would be applicable to those exceptions to the automatic stay provisions of Section 362(b) including 362(b)(4).

The legislative history of Section 362(b)(4) shows that it was Congress' intent that an exception to the stay is not to make the action immune from injunction.

"The Court has ample other powers to stay actions not covered by the automatic stay. Section 105 of proposed title 11 derived from the Bankruptcy Act, Section 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11 . . . Stays or injunctions . . . will not be automatic upon the commencement of a case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed (House Report # 95–595, 95th Cong. 1st Sess. [1977], 342–3, U.S.Code Cong. & Admin.News 1978, p. 6298; Senate Report # 95–989, 95th Cong. 2nd Sess. [1978] 51–2)."

While the Court has the authority under Section 105 to issue a stay or injunction, it is not necessary to make such a determination, since the automatic stay provisions of Section 362 are applicable and provide appropriate relief to the Trustee.

A judgment will be entered in accordance with these findings and conclusions.