**In re the SEEBURG CORPORATION, Debtor.**

**The SEEBURG CORPORATION, Nathan Yorke, Trustee of the Seeburg Corporation, and the Official Creditors' Committee of the Seeburg Corporation, Plaintiffs,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Defendant.**

**Bankruptcy No. 80 B 39597.**
**Adv. No. 80 A 1088.**

United States Bankruptcy Court, N. D. Illinois, E. D.

July 28, 1980.

Aileen A. Armstrong and Ruah Donnelly Lahey, NLRB, Washington, D. C., and Donald J. Crawford and William G. Kocol, NLRB, Chicago, Ill., for N. L. R. B.

Malcolm M. Gaynor and Chad H. Gettleman of Schwartz, Cooper, Kolb & Gaynor Chartered, Chicago, Ill., for Official Creditors' Committee of The Seeburg Corp.

Joseph L. Matz and Neil P. Gantz of Teller, Levit & Silvertrust, P. C., Chicago, Ill., for The Seeburg Corp.

## MEMORANDUM OPINION

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Complaint of THE SEEBURG CORPORATION, NATHAN YORKE, Trustee of THE SEEBURG CORPORATION, and the OFFICIAL CREDITORS' COMMITTEE of THE SEEBURG CORPORATION for the entry of an order enjoining the Defendant from prosecuting its action for damages against THE SEEBURG CORPORATION and NATHAN YORKE, Trustee of THE SEEBURG CORPORATION, before the National Labor Relations Board, Region 13, Case 13–CA–19631, and upon Defendant's Answer thereto, and the parties appearing by their respective attorneys, and

The Court having examined the pleadings filed in this matter, and having heard the arguments of counsel, and having received and examined Memoranda of the parties in support of their respective positions, and the Court being fully advised in the premises;

The Court Finds:

1. On October 19, 1979, THE SEEBURG CORPORATION, a Delaware corporation, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. NATHAN YORKE was duly appointed Trustee of THE SEEBURG CORPORATION by the United States Trustee for the Northern District of Illinois on February 4, 1980.

2. On February 11, 1980, this Court entered an Order which provided in relevant part as follows:

" . . . .

IT IS ORDERED that Nathan Yorke, trustee in bankruptcy, be and he hereby is, authorized to curtail the debtor's operations by:

(a) Terminating all personnel, save certain key individuals who will be retained for services the trustee deems necessary in furtherance of the reorganization.

" . . . ."

Pursuant to the aforesaid order, NATHAN YORKE terminated all the debtor's personnel save certain key individuals whose services were deemed necessary in furtherance of the instant reorganization. Subsequent thereto, the Trustee, pursuant to court order, rehired in connection with the sale of parts inventory some of the employees previously terminated.

3. On or about June 10, 1980, Plaintiffs filed a Plan of Reorganization and Disclosure Statement in the instant reorganization proceedings. The Plan of Reorganization includes and incorporates by reference a settlement agreement which contemplates the sale to Stern Electronics, Inc. of substantially all of the assets of THE SEEBURG CORPORATION. The Agreement further provides that if the Confirmation Order has not been entered and become final before August 15, 1980, the Agreement will terminate and be of no force and effect.

4. On June 17, 1980, NATIONAL LABOR RELATIONS BOARD, Region 13 filed a Complaint before the National Labor Re-

lations Board, Region 13, Case 13–CA–19631, alleging that THE SEEBURG CORPORATION and NATHAN YORKE, Trustee of THE SEEBURG CORPORATION, among others, engaged in unfair labor practices affecting commerce by terminating employees of the Debtor without prior notice to their union and without having afforded the union an opportunity to negotiate and bargain concerning the effects of said conduct.

5. On July 2, 1980, this Court entered an Order approving the aforesaid Disclosure Statement and setting the hearing on confirmation of the Plan of Reorganization for July 25, 1980.

6. On July 22, 1980, three days before the scheduled hearing on confirmation, the NATIONAL LABOR RELATIONS BOARD filed on behalf of certain former employees of the Debtor a proof of claim in the amount of $142,413.60, alleging that the claim was entitled to priority. The alleged basis for the claim is the violation by Debtor of the National Labor Relations Act, as amended, as set forth in the Complaint in Case 13–CA–19631 before the National Labor Relations Board, Region 13.

The Court Concludes and Further Finds:

1. § 507 of the Bankruptcy Code provides in pertinent part as follows:

"(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title

. . . . .
. . . . ."

§ 503(b) of the Bankruptcy Code provides in relevant part as follows:

"(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . . . .

. . . . ."

The alleged unfair labor practices occurred during the administration of the instant chapter 11 proceeding. The claim, insofar as it represents a claim for back pay, seeks a reparation order designed to vindicate public policy by making the employees whole for losses suffered on account of an unfair labor practice. *See Nathanson v. National Labor Relations Board*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). The claim, essentially one for damages for injury to the employees, is one of the "actual, necessary costs and expenses of preserving the estate" within the meaning and purview of § 503(b)(1)(A). *See Reading Company v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed. 751 (1968). It is an administrative expense entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2. § 1129 of the Bankruptcy Code provides in relevant part as follows:

"(a) The court shall confirm a plan only if all of the following requirements are met:

. . . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

. . . . ."

Under this provision, the Court shall not confirm a plan unless administrative expenses are paid. It is therefore essential in connection with the hearing on confirmation that the claim of the NATIONAL LABOR RELATIONS BOARD be liquidated.

■ 3. This Court has jurisdiction to determine the underlying liability and to liquidate the claim of the NATIONAL LABOR RELATIONS BOARD. § 241(a) of Title II of the Bankruptcy Reform Act of 1978 provides as follows:

**367**

"(a) Title 28 of the United States Code is amended by inserting immediately after chapter 89 the following:

.    .    .    .    .

§ 1471. Jurisdiction.

.    .    .    .    .

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.    .    .    .
.    .    .    ."

§ 402(a) of Title IV of the Bankruptcy Reform Act of 1978 provides that the aforesaid amendment shall take effect on April 1, 1984. However, § 404(a) of Title IV provides that the courts of bankruptcy existing on September 30, 1979 shall continue through March 31, 1984 to be the courts of bankruptcy for purposes of the Bankruptcy Reform Act of 1978, and § 405(b) of said Title further provides as follows:

"(b) During the transition period, the amendments made by sections 241, 243, 250, and 252 of this Act shall apply to the courts of bankruptcy continued section 404(a) of this Act the same as such amendments apply to the United States bankruptcy courts established under section 201 of this Act."

This court therefore has original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. The determination of the underlying liability and the liquidation of the claim of the NATIONAL LABOR RELATIONS BOARD fall within this grant of jurisdiction.

4. This Court also has jurisdiction to issue the prayed for injunction pursuant to the powers granted under § 105(a) of the Bankruptcy Code:

"(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The issuance of an injunction against the NATIONAL LABOR RELATIONS BOARD in this case is both necessary and appropriate to carry out the provisions of title 11 of the United States Code. The Supreme Court, in *Nathanson v. National Labors Relations Board, supra,* indicated that the bankruptcy court should normally stay its hand pending the decision of the Board:

"The bankruptcy court normally supervises the liquidation of claims. See *Gardner v. New Jersey,* 329 U.S. 565, 573 [67 S.Ct. 467, 91 L.Ed. 504]. But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. See *Thompson v. Magnolia Co.,* 309 U.S. 478, 483 [60 S.Ct. 628, 48 L.Ed. 876]. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision."

*Nathanson v. National Labor Relations Board, supra* 344 U.S. at 30, 73 S.Ct. at 83. The instant case, however, does not present the normal situation involving the reorganization of a debtor, since the subject claim is one for an administrative expense, the determination of which is an exclusive function of this Court and which is directly related to the Court's responsibility in its consideration of the entry of an order confirming a plan of reorganization.

The Ninth Circuit Court of Appeals, in *In re Bel Air Chateau Hospital, Inc.,* 611 F.2d 1248 (9th Cir. 1979), distinguished between the automatic stay provision of Bankruptcy Rule 11–44 and a stay issued as an exercise of discretion. The court could not determine in that case whether the stay imposed was an automatic or a discretionary stay and held, in light of the Supreme Court's suggestion in *Nathanson* that the bankruptcy court should be reluctant to interfere with Board proceedings, that it would be

inappropriate to hold that such proceedings are automatically stayed. However, the Ninth Circuit Court of Appeals indicated that if reorganization proceedings threaten the assets of the estate, the decision to issue a stay can be made on a discretionary basis. The court therein found that the stay granted by the bankruptcy court, even if issued as an exercise of discretion, should not have been imposed. It appeared that the bankruptcy court issued the stay because a receiver was operating the business and constituted ". . . 'a new and distinct juridical entity' against whom the prior unfair labor practices could not be remedied." *In re Bel Air Chateau Hospital, Inc., supra* at 1251. The court pointed out that whether or not the receiver was a successor to the earlier employer and an entity against whom the unfair labor practices could be remedied was a matter of federal labor law. The court stated:

"It is by no means clear in the event that the Board should determine that Bel Air committed unfair labor practices that it cannot enforce a remedial order against the Receiver, *see, e. g.,* NLRB v. Coal Creek Coal Co., 204 F.2d 579 (10th Cir. 1953), especially in light of established policy against allowing employers to change their legal form as a means of evading their responsibility under the Act."

*Id.* at 1251.

The most recent pronouncement in this area is *In re Shippers Interstate Service, Inc.,* 618 F.2d 9 (7th Cir. 1980), which involved the automatic stay of Bankruptcy Rule 11–44. The court quoted the above language from *Bel Air* and emphasized the distinction between liquidation and reorganization, warning that Chapter XI should not be used as an easy sanctuary from federal regulatory proceedings. The court held:

". . . [W]here, as here, it appears that the assets of the estate are not threatened and the company is being reorganized rather than liquidated, Bankruptcy Rule 11–44 shall not apply and regulatory proceedings of the National Labor Relations Board are not subject to the automatic stay provisions of that bankruptcy rule. This does not preclude imposition of a stay where a proper showing was made that the regulatory proceedings threatened the estate assets or that the bankruptcy or other proceedings would result in the liquidation of the company."

*Id.* at 13.

 In the instant case, the alleged unfair labor practices occurred during the administration of the Chapter 11 proceeding. THE SEEBURG CORPORATION did not file its Chapter 11 petition in order to avoid obligations under the National Labor Relations Act. The Plan of Reorganization provides for the sale of substantially all of the Debtor's assets to Stern Electronics, Inc. Since the Chapter 11 proceedings will result in the liquidation of the corporation if the Plan of Reorganization is confirmed, the imposition of a stay is appropriate and not precluded under *In re Shippers Interstate Services, Inc., supra.*

Concurrent herewith, an injunctive order will be entered in favor of Plaintiffs against Defendant, NATIONAL LABOR RELATIONS BOARD.