**In re TUCSON YELLOW CAB COMPANY, INC., Debtor.**

**TUCSON YELLOW CAB COMPANY, INC., Plaintiff,**

v.

**NATIONAL LABOR RELATIONS BOARD and Teamsters, Chauffuers, Warehousemen and Helpers, Local Union # 310, International Brotherhood of Teamsters, Chauffuers, Warehousemen and Helpers of America, Defendants.**

**Bankruptcy No. 81–00103.**
**Adv. No. 82–0187.**

United States Bankruptcy Court, D. Arizona.

June 16, 1982.

Lowell E. Rothschild, Tucson, Ariz., for plaintiff.

John A. Baade, Tucson, Ariz., for Teamsters Union Local # 310.

Gregory Z. Meyerson, Field Atty., N. L. R. B., Phoenix, Ariz., for N. L. R. B.

Donald L. Gaffney, Phoenix, Ariz., Robert Gugino, Tucson, Ariz., for Mary K. Ingrum.

## MEMORANDUM OPINION

WILLIAM A. SCANLAND, Bankruptcy Judge.

This matter came before the Court on the Debtor's, Tucson Yellow Cab Company, Inc., petition for a temporary restraining order. The Court, after a telephone conference with the lawyers for the Plaintiff and Defendants, issued a temporary restraining order and set a hearing on the temporary injunction for May 17, 1982, when the matter was heard.

A review of the background shows that a hearing was held on the rejection of an executory labor contract between the Plaintiff and Teamsters, Chauffuers, Warehousemen and Helpers Local Union # 310, International Brotherhood of Teamsters, Chauffuers, Warehousemen and Helpers of America which resulted in this Court's approval of the rejection by Order dated April 5, 1982.

The National Labor Relations Board appeared in the hearing for the temporary injunction and argued that the Debtor was guilty of unfair labor practices in that it had not made certain payments to a pension plan as required by the labor contract, and that the Plaintiff-Debtor has failed to negotiate the effect of discontinuing its operations or business by the Plaintiff. It is their contention, as well as Teamsters # 310, that the National Labor Relations Board should determine these matters. Further background shows that the Debtor filed under chapter 11 of the Bankruptcy Code as a result of a $450,000.00 personal injury judgment against it, of which an unsecured claim has been filed on behalf of the injured party of approximately $350,-000.00. Testimony at the hearing on the rejection of the labor contract showed that there had been an offer to purchase the assets of the Debtor for $175,000.00, but the buyer made as a condition to purchase the rejection of the labor contract. The Debtor's principal stockholder and officer testified that whether or not she sold the assets of the business she intends to cease doing business as of July 1, 1982, when under state law it will no longer be necessary for the operator of a taxi cab company to have a certificate of convenience to operate from the State of Arizona. The buyer also testified that whether or not he purchased the assets of the business, he would commence doing business in Tucson as of July 1, 1982, under one name or another.

At the hearing for the temporary injunction, the Debtor stated that the moneys due the pension plan under the labor contract would be paid under a chapter 11 plan to be submitted. The Debtor also admitted that she had not negotiated with the Teamsters Union as to the effect of shutting down the business because certain negotiations unrelated to this matter had not been fruitful and lead the Debtor to believe the Teamsters Union would not modify their labor contract in any way. The Debtor, at the hearing for approval to reject the labor contract, stated under oath that she was going out of business on July 1, 1982, and the Debtor's attorney stated that any plan presented would be a liquidating plan. This Court finds that the Debtor in this chapter 11 proceeding is in a liquidating position as distinguished from attempting to reorganize and continue an ongoing business.

The basic issue before this Court is—does this Court have jurisdiction to determine whether or not the Debtor is guilty of an unfair labor practice, and what the resultant penalty or monetary liability of the Debtor should be.

The attorneys for the Defendants rely heavily on *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), and the Ninth Circuit case, *Bel Air Chateau Hospital*, 611 F.2d 1248 (9th Cir. 1979). The *Nathanson* case has been answered by several courts who hold that by reason of the passage of 28 U.S.C. § 1471(b) of the Bank-

ruptcy Code, *Nathanson* has been overruled. See *In re Seeburg,* 6 B.C.D. 756, 5 B.R. 364, 2 C.B.C.2d 880 (Bkrtcy.N.D.Ill.1980); *In re Shippers Interstate Service, Inc.,* 618 F.2d 9, 6 B.C.D. 180 (7th Cir. 1980); *In re Theobald Industries, Inc.,* 8 B.C.D. 847, 16 B.R. 537 (Bkrtcy.N.J.1981).

In *In re D. M. Barber, Inc.,* 8 B.C.D. 188, 13 B.R. 962, 5 C.B.C.2d 150 (Bkrtcy.N.D. Tex.1981), the Bankruptcy Court held that it would not grant a discretionary stay to prohibit the Board, i.e., National Labor Relations Board, from liquidating its claim against the Debtor for the purpose of filing a claim in the bankruptcy estate. The Court went on to say:

> However this court retains the exclusive jurisdiction to determine the extent to which any such proof of claim should be allowed and priority treatment accorded it under the distribution hierarchy set forth in the Bankruptcy Code. Defensive issues outside the scope of the National Labor Relations Act such as payment, the extent of the credits, untimeliness or improper form of the claim, etc. will all be handled exclusively in the bankruptcy court.

While this case refuses to grant a stay, it does state, in agreement with *Bel Air Chateau Hospital, supra,* that in granting a discretionary stay it "would not be appropriate in a liquidation case so long as assets of the estate were not threatened."

The only way that the Bankruptcy Court could retain jurisdiction, as the *Barber* case indicates, would be to find that the Bankruptcy Court had jurisdiction to determine the amount and priority of the employees' claims after a decision by an administrative body such as the National Labor Relations Board had ruled and set the amount of the claim.

In *Bel Air Chateau Hospital, supra,* the Court stated, "If regulatory proceedings threaten the assets of the estate, the decision to issue a stay can then be made on a discretionary basis."

At the hearing on the temporary injunction, the attorney for the National Labor Relations Board advised the Court that if they found that an unfair labor practice had been committed, the penalty, as a matter of policy, would be to award each employee of the Debtor severance pay over and above what the ex-employee might be entitled to under the labor contract. Unliquidated claims have been filed by both the National Labor Relations Board and the Teamsters Union # 310 on behalf of the members of the bargaining unit for such award.

This Court has not found any case that decides what "threatened the assets of the estate" means. However, if we assume that the National Labor Relations Board were to award severance pay to the employees, and if this Court were to find that they had a priority for such claims over other unsecured claims, that could easily consume all of the assets of the estate to the detriment of nonpriority unsecured creditors. This Court believes that this constitutes a threat to the assets of the estate and so finds. Counsel for the Teamsters Union # 310 has stated that he will press the Court to determine that the claims of the ex-employees are a cost of administration. The discretion of allowing the amount and priority of the claim of the members of the bargaining unit should remain with the Bankruptcy Court. See, *In re Seeburg Corp.,* 6 B.C.D. 180, 5 B.R. 364 (D.C.N.D.Ill. 1980), where the court found that the assets of the estate were not threatened and the action of the National Labor Relations Board should not be stayed. The Debtor in *Seeburg* had filed a plan which provided for the payment of all back wage claims and the court found the assets were not threatened because of this fact. The Debtor-Plaintiff in these proceedings is not in that position. It is liquidating, and there is a major unsecured creditor in the amount of $350,000.00, and approximately $230,000.00 of trade creditors who have an interest in the amount and priority of the claims of the ex-employees who must be considered. See, *Matter of Shippers Interstate Service, Inc., supra,* where the United States Court of Appeals, Seventh Circuit, stated, "On balance we agree with Bel Air that if regula-

tory proceedings threaten the assets of the estate the decision to issue a stay can then be made on a discretionary basis."

In *In re Unit Parts Co.*, 9 B.R. 386 (D.C. W.D.Okl.1981), the United States District Court held that the Bankruptcy Court, under 28 U.S.C. § 1471, had jurisdiction of any and all claims by employees or former employees of the Debtor filed on behalf of a labor union and the National Labor Relations Board. It states that such matters are matters "arising from or related to these bankruptcy proceedings." The court went on to say that the last sentence of 28 U.S.C. § 1471(d) reads as follows:

Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

See, *In re Unit Parts Co.*, 7 B.C.D. 754, 10 B.R. 970 (Bkrtcy.W.D.Okl.1981) where the Bankruptcy Court made the determination of whether or not unfair labor practices had been committed by a debtor. The Bankruptcy Court's jurisdiction had been sustained by the District Court in the decision, *Unit Parts* referred to above.

*In re Seeburg Corp., supra,* discusses the matter of the Bankruptcy Court determining if an unfair labor practice has been committed and the resultant liability of an employer-debtor, and considers *Nathanson v. NLRB, supra.* There are apparently several considerations that must be made as to whether or not the Bankruptcy Court should abstain from setting the amount and priority of the claim. One of these considerations is the fact that this Plaintiff is in a liquidating position rather than a reorganization. Another is whether or not an employee-claimant claims an administrative expense as distinguished from a claim with a priority. The attorneys for Defendant Teamsters # 310 have stated they intend to press their claim as a cost of administration. *Seeburg* says, as follows:

The instant case, however, does not present the normal situation involving the reorganization of a debtor, since the subject claim is one for an administrative expense, the determination of which is an exclusive function of this Court and which is directly related to the Court's responsibility in its consideration of the entry of an order confirming a plan of reorganization.

Because the Debtor is in a liquidating position and the problems of determining the amount, the priority of the employees' claims, and the threat to the assets of the Debtor's estate, this Court finds it has jurisdiction to determine if an unfair labor practice has been committed by the Debtor and its liability therefore. However, this Court shall abstain from determining whether or not the Debtor has committed an unfair labor practice as contended by the National Labor Relations Board. This Court shall not abstain from the setting of any amounts due the employee-creditors whether it be as an administrative expense or claim entitled to a priority under 11 U.S.C. § 507. For such reasons the National Labor Relations Board is enjoined from proceeding any further than to determine whether or not an unfair labor practice has been committed by the Debtor.

This Opinion shall serve as Findings of Fact, Conclusions of Law under Bankruptcy Rule of Procedure 752. Counsel for Plaintiff IS ORDERED to prepare a form of injunction and lodge it with the Court within five (5) days from date.