**In re VANTAGE PETROLEUM CORP., Debtor.**

**George W. HUDTWALKER, Jr., Trustee for Vantage Petroleum Corp., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Defendant.**

Bankruptcy No. 882–81962–20.
Adv. No. 882–0796–20.

United States Bankruptcy Court,
E.D. New York
at Westbury.

Dec. 7, 1982.

472

Hershcopf & Stevenson, New York City, for trustee; Abraham Backenroth, New York City, of counsel.

Thomas H. Kemp, Janice Alperin, Washington, D.C., of counsel, for Dept. of Energy.

## MEMORANDUM

ROBERT JOHN HALL, Bankruptcy Judge.

George W. Hudtwalker, Jr., as Trustee for Vantage Petroleum Corp., a debtor under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (Supp. IV 1980), by a complaint filed on 22 November 1982, prays for a judgment staying administrative proceedings against the debtor by the Economic Regulatory Administration (the "ERA") of the United States Department of Energy (the "DOE"). Simultaneously, the Trustee on three days telephonic notice obtained a temporary restraining order prohibiting the DOE from issuing a Final Remedial Order against the debtor pending the hearing and determination of the instant proceeding scheduled, held and completed on 30 November 1982.

### Background

The debtor is in the business of leasing gas stations and distributing gasoline. At the present time, the debtor supplies and/or operates several dozen gas stations in the New York metropolitan area.

Based on the allegations in the DOE's responsive papers, it appears that on 7 April 1980, the ERA issued a Notice of Probable Violation ("NOPV"), later amended, charging the debtor with probable violations of DOE's gasoline price guidelines. In response, the debtor, by its then special counsel and accountants, submitted on 26 September 1980 a formal reply. Cf. 10 C.F.R. § 205.191 (1980). Thereafter negotiations ensued. However, on 23 February 1982, the ERA once again amended its NOPV. This time the debtor failed to respond which resulted in the issuance of a Proposed Remedial Order ("PRO") on default on 5 November 1982. Cf. id. (1982). The PRO which was published in the Federal Register on 15 November 1982, cf. id. at § 205.-192, contained proposed conclusions of law stating that the debtor had overcharged its customers in violation of 10 C.F.R. Part 212 in the amount of $1,274,886.72 based on sales from 1 April 1979 through 31 August 1982. The proposed remedies would require the debtor to deliver a certified check within 30 days to the DOE in the amount of $1,274.886.72 for overcharges and $981,-173.22 in interest from 1 April 1979 to November 1982.[1] Paragraph 4 of the PRO provides:

[1]. The DOE now concedes that it cannot claim interest after the date the bankruptcy commenced, to wit, 2 August 1982. DOE Memorandum at 4 n. 4; see 11 U.S.C. § 502(b)(2).

The Administrator of the Economic Regulatory Administration shall direct that these monies be deposited in a suitable account for ultimate disposition by DOE in accordance with law.

Inasmuch as the DOE is authorized, *inter alia,* to order a roll back in prices, to refund the money to purchasers or to deposit it with the Treasury, 10 C.F.R. § 205.1991, where it will presumably escheat to the United States if not claimed, *See, e.g.,* 28 U.S.C. § 2042 (1976), it is unclear to the Court what disposition of these funds is envisioned. *Cf. Citronelle-Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717 (T.E.C.A. 1982).

Be that as it may, inasmuch as the PRO was apparently published in the Federal Register, the debtor had until 30 November 1982 to file a Notice of Objection. 10 C.F.R. § 205.193. The debtor's failure to file such an objection would likely result in a final Remedial Order being issued. *Id.* Similarly, the debtor's failure to appeal such Remedial Order to the Office of Hearings and Appeals within 30 days would result in the entry of a final *non-appealable* order, *id.* at § 205.199c, presumably requiring it to comply with the above-indicated remedies. *But see* note 1 *supra.*

In the interim, however, an involuntary petition in bankruptcy was commenced against the debtor on 2 August 1982 which was converted to a voluntary petition under chapter 11 on 24 August 1982. Thereafter, on 8 September 1982, after a two day trial, Lawrence and Cheryl Iorizzo, who were the controlling officers, directors and sole shareholders of the debtor, were removed from control of the debtor in favor of Mr. Hudtwalker as Trustee after it was established that the Iorizzos had defrauded their

creditors out of millions of dollars. *See In re Vantage Petroleum N.J. Corporation,* No. 882–82411–20 (Bankr.E.D.N.Y. 16 Nov. 1982).[2] At this time, it is highly uncertain, even assuming the Iorizzos avoid prison, *see id.,* whether they will ever regain control of or share an interest in the reorganized debtor.

### The Hearing

At the 30 November 1982 hearing on the instant proceeding, the Trustee argued:

1. that the attorneys and accountants that had been representing the debtor before the DOE prior to the commencement of these proceedings were no longer representing the debtor;[3]

2. that the Trustee does not have the time nor expertise to contest these administrative actions;

3. that he has been quoted figures of $20,000.00 to retain competent counsel in Washington, D.C. to defend these actions;

4. that the estate can not afford this amount now;

5. that after investigation the Trustee might not object to the DOE's claim eliminating the need for any litigation;

6. and that in the absence of injunctive relief, the DOE will obtain a final non-reviewable judgment for the full amount sought by default without the Trustee having had a reasonable opportunity to inquire into the matter at a time when a reasonable delay would not prejudice the DOE as the representative of the allegedly overcharged public.[4]

In response, the DOE argued:

1. that inasmuch as the DOE is engaged in a regulatory action it is not stayed by section 362 of the Code;

---

Additionally, the DOE appears to conceed that it cannot enforce any administratively obtained judgment against the debtor's assets without leave of this Court. DOE Memorandum at 8; 11 U.S.C. § 362(b)(5).

**2.** Based on such facts, the Iorizzos have been replaced by a trustee in the related case of Vantage Petroleum N.J. Corporation.

**3.** In fact, they are now apparently unpaid creditors.

**4.** As indicated above, it is not at all clear whether the DOE intends to disburse the damages back to the public or keep them as a fine. In either case, no reason was offered as to why the DOE should be paid sooner or receive a higher percentage of its claim than other prepetition unsecured creditors of the debtor.

**474**

2. that the doctrine of sovereign immunity denies this Court the jurisdiction to enjoin the DOE proceeding under section 105 of the Code;

3. only the DOE has the jurisdiction and expertise to adjudicate this claim;

4. and that an extensive delay would prejudice the DOE by somehow invalidating their prior discovery.[5]

At this point, the Court informed the parties that it had no intention of trying this claim if only because it did not have the expertise, and that therefore if it were to be liquidated the litigation would have to be before the DOE.[6] This proposition was accepted by the Trustee. Accordingly, the issues to be resolved are:

1. Is the DOE presently stayed;

2. if not, does this Court have the power to enjoin it;

3. if yes, should this Court exercise that power?

### 1. *Section 362*

■ Section 362 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, *administrative,* or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title . . . .

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—. . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, *other than a money judgment,* obtained in an action or proceeding by a governmental until to enforce such governmental unit's police or regulatory power . . . .

11 U.S.C. § 362(a)(1) & (2), (b)(4) & (5) (emphasis added.)[7]

---

**5.** It was also conceded by the DOE at the hearing that their administrative proceeding deals only with the alleged pre-petition violations of the debtor and that the DOE was not aware of any current violations by the present management.

**6.** Additional authority for this proposition can be found in such sources as 28 U.S.C. § 1478(a); *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *Bulzan v. Atlantic Richfield Company,* 620 F.2d 278, 283 (T.E.C.A.1980). *But see* 28 U.S.C. 1471; *Neavear v. Schweiker,* 674 F.2d 1201 (7th Cir.1982); *Tucson Yellow Cab Company v. National Labor Relations Board,* 21 B.R. 166 (Bkrtcy.D.Ariz.1982); *Remke, Inc. v. United States,* 5 B.R. 299 (Bkrtcy.E.D.Mich. 1980).

**7.** The House Report to section 362(b)(4) & (5) provides:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a monetary judgment would give it preferential treatment to the detriment of all other creditors.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977) (the "House Report") *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 5787, 5963 *et seq.,* 6299. And the joint explanatory state-

In the instant case, although it is not completely clear,[8] the DOE is apparently attempting to fine the debtor for prepetition violations of gasoline price guidelines promulgated under the authority of the Emergency Petroleum Allocation Act of 1973, Pub.L. 93–159, 87 Stat. 628 and the Economic Stabilization Act of 1970, as amended, Pub.L. 93–28, 87 Stat. 27. The goal of this legislation was to provide an equitable allocation of crude oil at equitable prices as a response to the "national energy crisis" that crude oil shortages had caused, *Pasco, Inc. v. Federal Energy Administration,* 525 F.2d 1391, 1394 (T.E.C.A.1975), and to create an effective mechanism for enforcing such regulations on a national scale. *Citronelle-Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 721 (T.E.C.A.1982). Moreover, agency enforcement proceedings are not designed to provide redress for a particular victim injured by a DOE regulation violation, *Bulzan v. Atlantic Richfield Company,* 620 F.2d 278, 282 (T.E.C.A.1980), although restitution may be ordered, *Citronelle-Mobile,* 669 F.2d at 721.

Accordingly, it would appear that this is the type of regulation that falls into the exception created by section 362(b)(4); and that therefore, absent an injunction, the DOE is not stayed from liquidating their claim against the debtor.[9] *But cf. Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 776 (8th Cir.1981), *cert. denied,* 454 U.S. 1162,

102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *D.M. Barber, Inc. v. Valverde,* 13 B.R. 962, 963 (Bkrtcy.N.D.Tex.1981).

## 2. *Section 105*

■ The DOE takes the position that absent a waiver the doctrine of sovereign immunity denies this Court the jurisdiction to enjoin their proceedings. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Moreover, the DOE argues, section 105 is not such a statutory grant.

The legislative history to sections 105 and 362(b)(4) and subsequent case law are, however, to the contrary.

The House Report explains the interaction between these two sections thusly:

Subsection (b) lists five exceptions to the automatic stay. The effect of an exception is not to make the action immune from injunction.

The court has ample *other powers* to stay actions not covered by the automatic stay. *Section 105,* of proposed title 11, derived from Bankruptcy Act § 2a(15), grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The bankruptcy courts are brought within the scope of the All Writs Statute, 28 U.S.C. 1651 (1970), and are given the powers of a court of law, equity, and admiralty (H.R. 8200, § 243(a), proposed 28 U.S.C. 1481). Stays

---

ment issued by the sponsors of the Code, and accordingly entitled to great weight, *Pauley v. Spong,* 661 F.2d 6, 10 (2d Cir.1981), explained the provision thusly:

Section 362(b)(4) indicates that the stay under section 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

124 Cong.Rec. H11092 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); *id.* at S17409 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

8. The Court has been forced to move expeditiously: first to protect the Trustee from a default and now so as to decide whether to maintain its injunction. Accordingly, the Court has been unable to examine into all the intricacies of this matter as deeply as it otherwise would have chosen.

9. It should be noted, however, that the DOE is stayed by section 362 from collecting on any judgment it obtains—such as by ordering the debtor to pay the proposed fine—without leave of this Court. *Ohio v. Kovacs,* 681 F.2d 454, 456 (6th Cir.1982) (per curiam); *Ohio v. Mansfield Tire and Rubber Company,* 660 F.2d 1108 (6th Cir.1981). Furthermore, based on what has been presented to the Court, the granting of such leave would be inappropriate, inasmuch as it would apparently result in the DOE (or the public) receiving a preference. *See* 11 U.S.C. § 547; notes 4 & 7 *supra.*

of injunction issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay. There are some actions, enumerated in the exceptions, that generally should not be stayed automatically upon the commencement of the case, for reasons of either policy or practicality. Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

*With respect to stays issued under other powers,* or the application of the automatic stay, to governmental actions, *this section and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal government,* and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity.

House Report at 342, U.S.Code Cong. & Admin.News, pp. 6298–6299 (emphasis added). And the case law, both under the former Act and present Code, has recognized this principle. *See, e.g., Missouri v. U.S. Bankruptcy Court,* 647 F.2d 768, 776–77 (8th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *Garrity v. Goldstein (In re National Hospital and Institutional Builders Company),* 658 F.2d 39, 43 (2d Cir.1981); *Securities and Exchange Commission v. First Financial Group,* 645 F.2d 429, 439–40 (5th Cir.1981); *In re Shippers Interstate Service, Inc.,* 618 F.2d 9, 13 (7th Cir.1980); *National Labor Relations Board v. Jones, (In re Bel Air Chateau Hospital, Inc.),* 611 F.2d 1248, 1251 (9th Cir.1979) (per curiam); *National Labor Relations Board v. Brada Miller Freight Systems, Inc.,* 16 B.R. 1002, 6 C.B.C.2d 375, 389 (D.C.N.D.Ala.1981); *In re Northern Boneless Meat Corp.,* 9 B.R. 27, 29 (D.C.S.D. N.Y.1981); *Tuscon Yellow Cab Company v.*

*National Labor Relations Board,* 21 B.R. 166, 168 (Bkrtcy.D.Ariz.1982); *Schatzman v. Department of Health and Rehabilitative Services (In re King Memorial Hospital, Inc.),* 4 B.R. 704, 709 (Bkrtcy.S.D.Fla.1980).

Accordingly, it is clear that under the proper circumstances this Court has the power to enjoin proceedings before the DOE.

### 3. Should this Court Enjoin the Proceedings Before the DOE?

■ Consequently, this Court reaches the final question: should it enjoin the DOE's proceedings.

The above-cited cases speak of the propriety of such an action only when "the assets of the estate are threatened". Although there has been scant judicial elaboration on this phrase, *Tucson Yellow Cab, supra,* 21 B.R. at 168, the Act cases, under which the test arose, generally found it satisfied by threatened agency *enforcement* actions as opposed to agency *adjudicatory* activities. *See, e.g., Bel Air, supra,* 611 F.2d at 1251. However, inasmuch as section 362 now stays such enforcement activity automatically, the requirement of satisfying such a test before a section 105 injunction could issue, essentially renders section 105 superfluous. Such a statutory interpretation is never preferred. *Marsano v. Laird,* 412 F.2d 65, 70 (2d Cir.1969); *accord In re Rimgale,* 669 F.2d 426, 430–31 (7th Cir.1982).

Alternatively, one recent Code case held the assets of an estate to be sufficiently threatened to issue a section 105 injunction where the agency was about to determine a major claim in the case. *Tucson Yellow Cab, supra,* 21 B.R. 166.

Without attempting to define the parameters of what the test for the issuance of a section 105 injunction should be, the Court is convinced the Trustee has established justification in this case.

In the instant case, the Trustee was served with a Proposed Remedial Order which runs 84 pages and grew out of years of litigation to which he was not a party and informed that under the law he had 15 days to file a response. Clearly, he cannot.

Consequently, absent injunctive relief, the DOE will obtain an apparently non-reviewable default judgment, which fuller litigation may prove it not to be entitled to, to the detriment of the estate and its other creditors. This, the Court believes, is a sufficient threat to the estate to justify section 105 relief.

Finally, it is unclear to the Court whether the traditional test for the granting of a preliminary injunction is also applicable to this situation.

The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (footnote omitted).

Assuming this test also to be applicable, the Court finds the imminent threat of the DOE's obtaining a default judgment without the Trustee's having had an opportunity to examine into the underlying merits of the claim at a time when a reasonable delay would not prejudice the DOE to have satisfied the test.[10]

### Conclusion

Based on the foregoing, the Court holds that:

1. The DOE is not stayed by section 362 from adjudicating its claim against the debtor although it is stayed from enforcing any judgment it obtains without leave of this Court;

2. this Court has the power to enjoin the proceedings before the DOE under section 105; and

3. this Court will exercise that power by granting the Trustee until March 31, 1983 to file with the DOE an appropri-

ate response to the Proposed Remedial Order and hereby enjoins the DOE from issuing a final Remedial Order or taking any other equivalent action vis-a-vis the debtor pending the earlier of such date and the date, if any, the Trustee files such a response.

Settle Order.

---

**10.** Although the DOE alleged that a long delay would prejudice it, it never explained how. *Cf.* notes 4 & 9 *supra.*