**In re TUCSON YELLOW CAB COMPANY, INC., Debtor.**

**TUCSON YELLOW CAB COMPANY, INC., Plaintiff-Appellee,**

v.

**NATIONAL LABOR RELATIONS BOARD, and Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union 310, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants-Appellants.**

BAP Nos. AZ–82–1285–GHK, AZ–82–1287–GHK.
Bankruptcy No. 82–00103.
Adv. No. 82–0187.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Nov. 17, 1982.

Decided Jan. 25, 1983.

John A. Baade, Miller & Pitt, P.C., Tucson, Ariz., Eric Gary Moskowitz, N.L.R.B., Washington, D.C., for defendants-appellants.

Thomas J. Salerno, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for plaintiff-appellee.

Before GEORGE, HUGHES, and KATZ, Bankruptcy Judges.

## OPINION

GEORGE, Bankruptcy Judge.

On appeal is an order of the trial court permanently enjoining the National Labor Relations Board ("NLRB") from assessing a possible back pay award against the debtor, resulting from the rejection of its collective bargaining agreement with its employees. Because we feel that this injunction resulted from the trial court's misunderstanding of its jurisdiction in this matter, 21 B.R. 166, we vacate the court's order.

## I. BACKGROUND

Prior to the filing of its Chapter 11 petition on January 27, 1982, the debtor, TUCSON YELLOW CAB COMPANY, INC., was the party to a collective bargaining agreement with the TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS LOCAL UNION No. 310, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA ("the Union"). Following an unsuccessful attempt to reorganize its business affairs under this chapter of the Bankruptcy Code, Tucson Yellow Cab ultimately decided to sell its business and assets for the benefit of creditors. In this pursuit, the debtor determined that its assets could best be sold free and clear of liens and its business free from the collective bargaining agreement with the Union. On March 12, 1982, a complaint was made to the trial court seeking to engage in such a sale and to reject that agreement.

In response to the above complaint, on March 19, 1982, the Union filed an unfair labor practice charge against Tucson Yellow Cab, maintaining that the debtor had violated the National Labor Relations Act by, among other things, failing to make contributions to the union pension fund and to discuss its liquidation plans with the Union.

On April 2, 1982, the trial court heard evidence on Tucson Yellow Cab's complaint and ordered the collective bargaining agreement rejected. A waiver of appeal on this order was executed by the Union on April 5, 1982. On April 7, 1982, the trial court approved the sale of the debtor's business and assets, which sale was consummated on April 12, 1982.

In the meantime, on April 28, 1982, the NLRB issued a complaint and notice of hearing against Tucson Yellow Cab, based upon the allegations of the Union. In order to forestall further action by the NLRB, on May 10, 1982, the debtor obtained a temporary restraining order from the bankruptcy court. Following a hearing held on May 17, 1982, the bankruptcy court issued an injunction permanently preventing the NLRB from continuing its proceedings against Tucson Yellow Cab, except for the purpose of ascertaining whether an unfair labor practice had been committed by the debtor. The Union and the NLRB have appealed from that grant of relief.

## II. ANALYSIS OF THE FACTS AND THE LAW

We find two principal errors in the reasoning of the bankruptcy court which led to the issuance of its June 23, 1982 injunction. These are found in its supportive memorandum opinion of June 16, 1982.

■ First, the bankruptcy trial court erroneously assumed that it had jurisdiction to assess the amount of monetary compensation owed by the debtor as the result of an unfair labor practice determination by the NLRB. In the recent case of *In re Adams Delivery Service, Inc.,* 24 B.R. 589 (9th Cir. B.A.P.1982), the panel held that an NLRB proceeding was not a "civil proceeding," under the jurisdictional grant of 28 U.S.C. § 1471(b), or a "civil action," under the removal provisions of 28 U.S.C. § 1478. *Id.* at 592. *See also* 1 Collier on Bankruptcy ¶ 3.01, at 3–70 through 3–71 (15th ed. 1982). In reviewing the provisions of the National Labor Relations Act which empower the NLRB to proceed against those who commit unfair labor practices, we find that the issuance of back pay orders and other monetary awards is an inseparable part of the exclusive authority given the NLRB to "prevent any person from engaging in any unfair labor practice ... affecting com-

merce." 29 U.S.C. § 160(a) (West Supp. 1982). In this regard, section 10(c) of the National Labor Relations Act mandates that the NLRB, upon finding an unfair labor practice,

> *shall* issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, *and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act....*"

29 U.S.C. § 160(c) (West Supp.1982) (emphasis supplied).

From the above passage, it is clear that the award of back pay to the victims of unfair labor practices, while possibly becoming a monetary claim against a debtor's estate in bankruptcy, is more specifically aimed at rectifying the type of past employer or union misconduct over which the NLRB has been given exclusive jurisdiction by Congress. Therefore, we do not believe that this liquidation of employees' back pay claims can be severed from the other forms of relief authorized and required by section 10(c), such as the issuance of cease and desist orders or of orders of reinstatement. *See Nathanson v. National Labor Relations Board,* 344 U.S. 25, 29–30, 73 S.Ct. 80, 83–84, 97 L.Ed. 23 (1952).

In acknowledging the inability of the bankruptcy court to encroach upon this administrative function of the NLRB, however, we do not wish to deny the power of the bankruptcy court to deal with the claims of employees resulting from an NLRB award. In the end, it remains the limited right of the bankruptcy court to examine the allowability of such claims, as it does all other claims, and its absolute duty to determine their relative priority under the provisions of the Bankruptcy Code and of other applicable state and federal laws. 28 U.S.C. § 1471(b) (West Supp. 1982); 11 U.S.C. §§ 502, 503 & 507 (West Suppl.1982). *See also In re D.M. Barber, Inc.,* 13 B.R. 962, 965, 5 C.B.C.2d 150, 155, 8 B.C.D. 188, 190 (N.D.Tex.Bkrptcy.1981).

Notwithstanding the bankruptcy court's lack of jurisdiction to assume the NLRB's role with respect to unfair labor practice charges, it has been well-argued that the court may enjoin such proceedings when they "threaten" the assets of an estate. *In re Bel Air Chateau Hospital, Inc.,* 611 F.2d 1248, 1251 (9th Cir.1979); *Matter of Shippers Interstate Service, Inc.,* 618 F.2d 9, 13 (7th Cir.1980); *In re Seeburg Corp.,* 5 B.R. 364, 368, 6 B.C.D. 180, 183 (N.D.Ill.1980). Nevertheless, we find the trial court's second principal error in its determination that the actions of the NLRB, in the instant proceeding, threatened the assets of the debtor.

As we understand the trial court's memorandum opinion, the "threat" to the debtor's estate lay in the possibility that the back pay awards of the NLRB might be deemed priority claims, the payment of which would preclude the payment of dividends to general unsecured creditors. With respect to this argument, the lower court cannot be suggesting that the statutory claims of employees should be entirely ignored merely in order to permit unsecured creditors to obtain a satisfaction on their claims. Rather, the bankruptcy court apparently believes that the NLRB will somehow evaluate the claims before it in such a way as to unreasonably burden Tucson Yellow Cab's estate. In this regard, however, we fail to see how the existence of employees' claims, under the National Labor Relations Act, forms any greater threat to the debtor's estate, when the NLRB is assessing the amount of Tucson Yellow Cab's debt, than if the bankruptcy court were, itself, to make that judgment. We recognize, of course, that the discretion exercised by these tribunals might vary, to some extent. Still, the final assessment of both would be kept within reasonable bounds by review on appeal. In any case, as noted above, even after the NLRB liquidates the Union's claims, the bankruptcy court will yet retain some authority to supervise the allowance and payment of those claims.

While we agree with the trial court that there is little or no authority available to instruct us when an action of the NLRB represents an enjoinable threat to a debt-

or's estate, we do not agree that the issuance of a back pay order, based upon a plain statutory right, forms such a threat, even though that order may greatly enhance the amount of priority obligations payable from the estate. *See In re D.M. Barber, Inc., supra,* at 965, 5 C.B.C.2d at 155, 8 B.C.D. at 190. The NLRB's proceedings should not have been enjoined on this basis, notwithstanding the authority granted the trial court under 11 U.S.C. § 105(a).

### III. CONCLUSION

We find error in the trial court's assumption of jurisdiction over a matter not constituting a civil proceeding under 28 U.S.C. § 1471(b). We further hold that the lower court abused its discretion under 11 U.S.C. § 105(a) in enjoining an NLRB proceeding which did not represent a threat to the assets of the debtor herein. This injunction must, therefore, be VACATED.